FRANK B. HALL & CO., INC., *et al.*, Plaintiffs-Appellees, *v.*
JAMES C. PAYSEUR *et al.*, Defendants-Appellants.

First District (4th Division)    Nos. 80-609, 80-2039 cons.

Opinion filed August 6, 1981.—Rehearing denied October 2, 1981.

Matt P. Cushner, Barry E. Yavitz, and Pedersen & Houpt, all of Chicago, for appellants.

James L. Perkins, John L. Huff, and Scott K. Szala, all of Winston & Strawn, of Chicago, for appellees.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

This matter arose out of an action for declaratory judgment, injunctive relief, and damages for violation of a covenant not to compete signed by James C. Payseur, defendant, former officer-employee of plaintiffs, Frank B. Hall & Co., Inc., and Frank B. Hall & Co. of Illinois, Inc. (Hall of Illinois). Bayly, Martin & Fay of Illinois, Inc. (Bayly of Illinois), was also named as a defendant. On August 7, 1978, the trial court issued a preliminary injunction against defendants. We affirmed the granting of that preliminary injunction. *Frank B. Hall & Co. v. Payseur* (1979), 78 Ill. App. 3d 230, 396 N.E.2d 1246.

On May 16, 1979, while the prior appeal was pending, plaintiffs commenced contempt proceedings against defendants for violating the temporary restraining order and the preliminary injunction. Defendants, on September 15, 1979, filed their verified answer denying the material allegations in plaintiffs' petition. The proceedings began on November 19, 1979, and closed on December 11, 1979. The trial court, on February 20, 1980, entered its order holding Payseur and Bayly of Illinois in contempt for violating the injunctive order, and fined Payseur and Bayly of Illinois each $5000. On February 15, 1980, plaintiffs petitioned the trial court for attorneys' fees and costs totaling $48,564. On June 16, 1980, the trial court granted an award of attorneys' fees to plaintiffs in the amount of $45,555.

On March 4, 1980, defendants filed their notice of appeal from the contempt order. Subsequently, on July 15, 1980, defendants filed their notice of appeal from the award of attorneys' fees and costs. The two appeals were consolidated on August 1, 1980.

Defendants presented the following issues for review: (1) whether the trial court erred in finding defendants in contempt and (2) whether the trial court erred in assessing compensatory damages, excessive fines, and attorneys' fees and costs against defendants. We affirm.

Payseur was a director and vice president of Hall of Illinois and was in charge of the Des Plaines office. Payseur resigned his positions at Hall of Illinois in May 1978. He is the founder, chief executive officer, and 50 percent shareholder of Bayly of Illinois. In June 1978, Bayly of Illinois opened for business with Payseur as its president. Another employee, Lorraine Grenvich, resigned from Hall of Illinois in June 1978 and agreed to work for Payseur at Bayly of Illinois. During the first and second weeks

of June 1978, Bayly of Illinois sent out mailings to park districts and laundromats requesting that they appoint Bayly of Illinois as their broker of record. Plaintiffs learned of these activities and filed suit against Payseur for breach of the covenant not to compete. (*Hall v. Payseur*, at 233.) On June 27, 1978, a temporary restraining order was issued enjoining Payseur from contacting any Hall of Illinois customers in order to induce them to transact their business with Bayly of Illinois.

The evidence at the contempt proceeding revealed that between July 13, 1978, and August 15, 1979, Hall of Illinois lost approximately 61 laundromat insurance customers and 1 park district customer to Bayly of Illinois. Plaintiffs had filed and served a computer listing of their customers protected by the preliminary injunction.

Payseur testified that some of the park districts purchased insurance with effective dates after the issuance of the temporary restraining order. He also indicated that Bayly of Illinois received broker of record letters from former customers of Hall of Illinois after June 27, 1978.

Plaintiffs' witness, Fred Bergman, who is the profit center manager of the Des Plaines office, testified that the broker of record letters did not constitute sales of insurance because additional contact with each customer was required to determine limits of liability, accuracy of coverage, and acceptability of the premium. Bergman also testified that laundromats that renewed with Payseur and Bayly of Illinois were former customers of Hall of Illinois. The park districts of Deerfield, Rockford and Downers Grove had policies with Hall of Illinois during the 6-month period before and after Payseur resigned from Hall of Illinois. Deerfield renewed with Bayly of Illinois on June 17, 1979.

James L. Stone, an employee of Bayly, Martin & Fay, Inc. (not Bayly of Illinois), testified on behalf of the defendants. He was the former president of Hall of Illinois until December 1978 when he resigned to become president and chief executive officer of Bayly, Martin & Fay, Inc. According to Stone, a broker of record letter authorizes the broker to be an insured's exclusive representative on the insurances in force and the placement of additional insurances in the insurance marketplace. Stone indicated that a customer is lost when the insured instructs the broker not to renew a policy, tells a broker to cancel policies or issues a broker of record letter to another broker.

On cross-examination, Stone testified that the broker of record letter in defendants' exhibit did not constitute the sale of an insurance policy. He also indicated that the client or the broker could reject a broker of record letter within a reasonable time.

The trial judge found and ruled that 61 laundromats and 1 park district insurance customer switched their insurance business from Hall of Illinois to Payseur and Bayly of Illinois by renewing or purchasing their

insurance through the defendants. Each of these customers was contained in the Hall of Illinois customer list which previously had been served upon defendants. Further, each customer possessed, both during the period 6 months before and after Payseur resigned, as well as the time Payseur and Bayly of Illinois contacted such customer, a policy which had been brokered by and purchased through Hall of Illinois. Such customer continued to possess that policy until it was renewed by Payseur and Bayly of Illinois.

The trial court fined Payseur and Bayly of Illinois $5000 each, payable to the Cook County General Fund, and required Payseur and Bayly of Illinois to remit to Hall of Illinois all commissions received for sale or renewal of policies to any of the customers or store locations listed in the order after February 1, 1980. Further, the trial court assessed plaintiffs' reasonable attorneys' fees and costs against Payseur and Bayly of Illinois, jointly and severally.

Defendants contend the court erred in finding them in contempt; in holding that defendants violated the orders prohibiting them from inducing Hall's customers to switch their business; and in finding that the execution of broker of record letters constituted a switch of business.

■■ It has been generally stated that the only issue involved in contempt proceedings alleging violation of an injunction is whether the injunction has been violated. (*Debowski v. Shred Pax Corp.* (1977), 45 Ill. App. 3d 891, 903, 359 N.E.2d 204, 213.) A finding of willful contempt is a matter of fact to be determined by the trial court and it will not be disturbed on review unless there is a clear abuse of discretion. *American Cyanamid Co. v. Rogers* (1974), 21 Ill. App. 3d 152, 154, 314 N.E.2d 679, 681.

The temporary restraining order issued on June 27, 1978, enjoined and restrained defendants from:

"(1) Inducing or attempting to induce employees of plaintiffs; employ and become employed by Payseur or any affiliated company operating in the insurance business in competition with plaintiffs;

(2) Contacting customers of plaintiffs in order to induce or attempt to induce them to cease doing business with plaintiffs and/or switch their insurance business from plaintiffs to Payseur, Payseur's new company, Bayly, or Bayly of Illinois;

(3) Contacting insurance companies and/or their general agents in order to induce or attempt to induce them to cease providing insurance coverage for insurance plans brokered by plaintiffs on behalf of their customers."

Subsequently, after the evidentiary hearing, the preliminary injunction was granted by the trial court on August 7, 1978, as follows:

"(1) Plaintiffs' application for a preliminary injunction is granted

such that defendants Payseur and Bayly, Martin & Fay of Illinois, Inc. are enjoined from:

(A) inducing or attempting to induce employees of Hall of Illinois to resign and/or become employed by Payseur, Bayly, Martin & Fay of Illinois, Inc., or any Bayly-affiliated company operating in the insurance brokerage in Illinois;

(B) contacting customers of Hall of Illinois in order to induce or attempt to induce them to cease doing business with Hall of Illinois or switch their insurance business from Hall of Illinois to Payseur, Bayly, Martin & Fay of Illinois, Inc. or any Bayly-affiliated company operating in the insurance business in Illinois, 'customers' being defined for the purpose of this Order as any individual customer, corporation or association that was an insurance client of Hall of Illinois within the six calendar months immediately preceding Payseur's resignation from Hall of Illinois or who becomes an insurance client of Hall of Illinois within the six calendar months following the date of his resignation; and

(C) contacting insurance companies or their general agents in order to induce or attempt to induce them to cease providing insurance coverage for insurance plans brokered by Hall of Illinois on behalf of their customers as defined in paragraph 1(B) above.

(2) the application for preliminary injunction against defendant Bayly, Martin & Fay, Inc., an Illinois corporation (as opposed to defendant Bayly, Martin & Fay of Illinois, another Illinois corporation), is denied.

(3) Plaintiffs shall, within seven days from the date of the entry of this Order, serve upon the parties to this action a verified list of its customers as defined above in paragraph 1(B) of this order and also file such list with the Clerk of this Court in a sealed envelope marked 'CONFIDENTIAL— NOT TO BE OPENED WITHOUT ORDER OF COURT.' Plaintiffs shall on the fifteenth of each month up to and including November of 1978, list additional or new customers obtained by Hall of Illinois during the six-month period commencing May 26, 1978, which customers shall also be included within the definition of paragraph 1(B) of this Order. The lists of customers furnished to defendants and to the Court shall be deemed to be privileged and confidential, shall be used only for the purpose of determining the scope of this Order and defendants' compliance therewith, and

shall not be disclosed to any persons or used for any purpose not expressly authorized by further Order of this Court. Upon termination of said six-month period, defendants and their attorneys shall return to plaintiffs' attorneys all such customer lists and all copies, excerpts or abstracts thereof, and shall verify that they no longer possess such lists, copies, excerpts or abstracts.

(4) This preliminary injunction shall remain in full force and effect throughout the duration of this litigation.

(5) This preliminary injunction is binding upon all parties to this action, their officers, agents and employees."

There was sufficient evidence at the contempt proceeding to substantiate the court's finding of contempt. Payseur admitted that after the effective date of the temporary restraining order, Bayly of Illinois received broker of record letters from former customers of Hall of Illinois and that former laundromat customers of Hall of Illinois had purchased insurance from Bayly of Illinois after the effective date of the order. Further, there was evidence that their new clients were former clients of Hall of Illinois, and that Bayly of Illinois continued to solicit the business of these Hall of Illinois customers in disregard to the injunctive order.

We disagree with defendants' contention that at the contempt proceeding the court found the broker of record letters constituted a switch of business. There is no basis in the record to support this contention. Bergman testified that the broker of record letters do not constitute a switch of business because of the necessity to further contact the customer to ascertain the type, amount and kind of coverage needed. Most importantly, in the court's ruling there is no finding that these broker of record letters constituted a switch of business.

Defendants finally contend that the court erred in assessing attorneys' fees and costs, excessive fines, and compensatory damages against them.

■■ The power of a court to punish for contempt is inherent in all courts as essential to proper and effective functioning of the courts and to the administration of justice. It is an essential auxiliary to the administration of law. *47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1977), 56 Ill. App. 3d 229, 233, 371 N.E.2d 294, 298.

■■ The private litigant who brings the fact of an indirect contempt, civil or criminal in nature, before the court, performs a valuable service to the court. An appropriate remedy, in cases of both civil and criminal contempt, may well be to require the contumacious party to bear the reasonable costs, as well as attorneys' fee, of the contempt proceeding. Although there may be some incidental benefit to the moving party, it would be inequitable not to require the contumacious party to pay such costs. (*47th & State Currency Exchange, Inc.*, at 235.) The assessment of attorneys' fees and costs against defendants by the trial court was proper.

■■ In *Rothschild & Co. v. Steger & Sons Piano Manufacturing Co.* (1912), 256 Ill. 196, 99 N.E. 920, our supreme court held it was well settled in Illinois that civil contempt is not a private remedy but is punishment for an affront to the authority of the court and, hence, any fine imposed is payable to the public treasury and not to the plaintiff. Thus, it is clear that in Illinois a plaintiff may not recover compensatory damages in a civil contempt proceeding. (*Round Lake Sanitary District v. Basic Electronics Manufacturing Corp.* (1978), 60 Ill. App. 3d 40, 43, 376 N.E.2d 436, 439.) Therefore, the fine of $5000 levied against Payseur and Bayly of Illinois each is within the discretion of the trial court. However, the award of commissions received by Bayly of Illinois for sale or renewal of policies to Hall of Illinois is vacated.

For the foregoing reasons, judgment of the circuit court of Cook County as modified is affirmed.

Judgment affirmed as modified.

ROMITI, P. J., and JIGANTI, J., concur.