*In re* MARRIAGE OF KATHLEEN WILDE, a/k/a Kathleen Moore, Plaintiff-Appellant, and ALLEN WILDE, Defendant-Appellee.

Second District   No. 2—84—1219

Opinion filed February 21, 1986.

466

Gerard Kepple, of St. Charles, for appellant.

William J. Harte, of Chicago, for appellee.

JUSTICE HOPF delivered the opinion of the court:

On September 12, 1984, a hearing was conducted on the amended section 2—1401 petition of defendant, Allen Wilde. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401.) The petition alleged that defendant's former wife, plaintiff, Kathleen Wilde Moore, had made false and fraudulent representations regarding the education of the couple's son, causing defendant to continue child support payments beyond the time of his legal obligation. The trial court granted defendant's petition and set a hearing for October 15, 1984, to consider the issue of sanctions against plaintiff and her attorney, Gerard Kepple. As a result of this hearing, the court concluded that Kepple was guilty of criminal contempt and imposed a fine of $500 against him. Kepple subsequently filed a motion to reconsider which was denied. On December 3, 1984, a hearing was conducted on defendant's petition to terminate child support. The trial court granted the petition, awarding defendant credit for child support payments made by defendant from December 15, 1982, to January 1, 1984.

Plaintiff appeals from orders of the trial court granting defend-

ant's amended petition brought pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401) and granting defendant's petition to terminate child support. Plaintiff's attorney appeals from the trial court's order finding him guilty of contempt.

Plaintiff, Kathleen Wilde Moore, and defendant, Allen Wilde, were divorced on March 28, 1969. At that time defendant was ordered to pay child support for Samuel Wilde, the minor child of the parties, in the sum of $20 per week. Shortly thereafter, defendant disappeared, refusing to pay child support. In June 1981, an action was brought by plaintiff against defendant for arrearages in child support. On December 18, 1981, the trial court ordered defendant to pay arrearages in the amount of $13,160, payable at the rate of $250 per month; the court also increased current child support to $25 per week.

On January 9, 1984, an agreed order was entered, finding that defendant was to continue to pay child support payments until June 1, 1984, when defendant's son, Samuel, would complete his high school education. (Defendant's son became 18 years old on December 23, 1983.) On July 23, 1984, defendant filed a section 2—1401 petition claiming that plaintiff had lied about Samuel's completion of high school, as Samuel had dropped out of high school in December 1982, and that, but for plaintiff's representations regarding Samuel's education, defendant would have legally ceased making current child support payments. Defendant asked the trial court to vacate any child support orders and arrearages entered since December 1982, and that he be given credit for them.

Plaintiff filed a motion to dismiss defendant's petition, contending that defendant's petition was deficient because it contained no allegations of due diligence or of a meritorious defense, that negligence on the part of the party seeking relief under section 2—1401 disqualifies that party from such relief, and that defendant's petition was deficient as a matter of law because unaccompanied by an affidavit as required under section 2—1401. On September 12, 1981, both defendant's affidavit and an amended section 2—1401 petition were filed in open court. In his affidavit, defendant stated that both plaintiff and the son, Samuel, had represented to defendant, as late as March 1984, that Samuel was attending high school when, in fact, he had not attended since December 1982. Defendant's amended petition contained substantially the same contentions as the original petition plus the contention that he had acted with due diligence in bringing the petition and that he possessed a meritorious defense.

A hearing on defendant's petition was held on September 12, 1984. No court reporter was present at the proceedings. The September 14 order that issued, as a result of the September 12 hearing, granted defendant's amended 2—1401 petition and ordered that child support payments from December 1982 to January 1984 be applied to arrearages which accumulated prior to January 9, 1984. The court also ordered that the issue of sanctions against plaintiff and her attorney, Kepple, for false representations they made to defendant regarding Samuel's attending high school, was reserved for hearing on October 15, 1984.

At the October 15 hearing, the court specifically stated that the purpose of the hearing was to determine "sanctions" against the party guilty of making false and material representations to defendant regarding Samuel's schooling. William Bochte, the attorney representing defendant at the time of the January 9, 1984, agreed order, and plaintiff, Kathleen Wilde Moore, were called as witnesses by the court and examined. Kepple was permitted to examine Bochte and Moore. Kepple himself testified although in the manner of a narrative. No attorney was present to represent Kepple. A letter, dated November 22, 1983, from Kepple to Bochte was submitted to the court. In the letter Kepple represented that Samuel would graduate from high school on or about June 1, 1984. The agreed order of January 9, 1984, was also tendered to the court.

At the conclusion of the hearing, Kepple represented that the letter to Bochte was not in his handwriting but in that of his secretary's and that he had not signed the letter. The court commented that Kepple's letter to Bochte was clearly an offer of settlement for which Kepple bore the responsibility of reading before letting it go out and that it was clear from both the letter and the subsequent agreed order that there had not been a full and honest disclosure to defendant regarding the education of his son. The court imposed sanctions against Kepple for misrepresenting facts within his knowledge upon which the defendant and defendant's attorney relied in making the January 9 agreed order. The trial court's subsequent written order reflected its comments at the hearing. In that order the court found that Kepple's false representations constituted criminal contempt, and the court imposed a sanction of $500 to be paid to defendant's attorneys as partial payment for their fees.

On December 3, 1984, a hearing was conducted on defendant's petition to terminate child support which had been filed on October 15, 1984. The court found that defendant's son, Samuel, was emancipated as of December 1982, when he dropped out of school and began work-

ing on a full-time basis. On this basis, the court ordered that defendant be given credit for payments made since December 15, 1982, until January 1, 1984. Plaintiff filed a timely notice of appeal.

■ In this court defendant-appellee has failed to file a brief. However, under the holding of *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493, a reviewing court may search the record and decide the merits of the appeal if justice so requires. Given the nature of this case, justice requires consideration of the merits of the appeal by this court.

In this court, plaintiff presents 10 issues for review. We elect, however, to treat these issues as three main contentions: (1) whether, in finding plaintiff's attorney, Kepple, guilty of contempt, the trial court denied him a full and proper hearing; (2) whether the trial court erred in granting defendant's amended 2—1401 petition; and (3) whether the trial court erred in holding that Samuel Wilde was an emancipated child.

Plaintiff's attorney, Kepple, contends that the order holding him in contempt cannot stand because he was denied a full and proper hearing, the court's allegations of fraudulent conduct and defendant's evidence did not prove him guilty beyond a reasonable doubt, and the trial judge was biased against him and, therefore, should have recused himself.

■ Contempt of court is conduct intended to embarrass, hinder or obstruct the administration of justice by a court, or to derogate from the court's authority or dignity, or to bring the administration of law into disrepute. (*People v. Jashunsky* (1972), 51 Ill. 2d 220, 223, 282 N.E.2d 1.) Criminal contempt proceedings are directed to preservation of the dignity and authority of the court, while civil contempts are prosecuted to enforce the rights of private parties and to compel obedience to orders or decrees for benefits of opposing parties. (*People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 409, 173 N.E.2d 417.) Where the sanction imposed by a court for contempt is punitive, such as imprisonment for a definite term or a fine in a sum certain, the contempt is criminal in nature. (*Aurora Steel Products v. United Steelworkers of America* (1981), 94 Ill. App. 3d 97, 100, 418 N.E.2d 492.) Where a sanction imposed is strictly coercive, the contempt is civil. (*People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 410, 173 N.E.2d 417.) In Illinois a direct contempt occurs in the physical presence of the court, or within an integral part of the court, making the contemptuous conduct a matter within the court's personal observation and knowledge. (*Sunset Travel, Inc. v. Lovecchio* (1983), 113 Ill. App. 3d 669, 674, 447

N.E.2d 891; *People v. Pincham* (1976), 38 Ill. App. 3d 1043, 1045, 350 N.E.2d 67.) An indirect contempt is one which in whole or in essential part is committed out of the presence of the court and is, therefore, dependent for its proof upon extrinsic evidence of some kind or upon the establishment of facts of which the court possesses no personal knowledge. *Sunset Travel, Inc. v. Lovecchio* (1983), 113 Ill. App. 3d 669, 675, 447 N.E.2d 891; *People v. Pincham* (1976), 38 Ill. App. 3d 1043, 1045, 350 N.E.2d 67.

■ In the instant case, plaintiff's attorney was held in contempt for allegedly making false representations to defendant and defendant's attorney regarding the continued education of defendant's son, Samuel. According to the court, Kepple's misrepresentations led defendant to agree in January 1984 to continue current child support payments to the date of Samuel's alleged graduation, even though Samuel became 18 in December 1983, causing defendant's legal obligation to cease at that time. (*Prenzler v. Prenzler* (1977), 55 Ill. App. 3d 244, 246-47, 370 N.E.2d 642.) The sanction imposed by the court against Kepple was a $500 fine, payable to defendant's attorney for attorney fees incurred by defendant in bringing his suit to vacate the January 9, 1984, agreed order and for any other orders regarding child support payments which issued since the emancipation of Samuel.

No doubt exists that the contempt which occurred in this case was criminal rather than civil. First of all, the contempt consisted of an act which tended to lessen the dignity or impede the process of the court. Second, the fine imposed by the court was punitive and for a sum certain. Third, the trial court, in imposing a $500 fine, specifically found in its October 15, 1984, order that Kepple's false misrepresentations constituted criminal contempt.

■ In this court, Kepple agrees that the trial court held him in criminal contempt. However, he maintains that at one point the court found him guilty of direct criminal contempt while later finding him guilty of indirect criminal contempt. Kepple claims that the court's confusion in labeling the contempt proves he was not found guilty beyond a reasonable doubt of contempt and, therefore, the contempt finding should be reversed. We do not agree with Kepple's contention that the court assigned two different labels to the contempt.

Kepple bases his belief that the court originally held him in direct contempt on a finding in its September 14, 1984, order, in which the court found:

> "8. That all 'errors of fact,' mistakes and circumstances giving rise to Respondent's Amended Petition pursuant to section 2—

1401 were the result of the direct acts, misrepresentations and consequences caused by petitioner or his attorney."

Kepple argues that because the court used the word "direct" in the above finding, this meant it was holding Kepple in direct contempt. Such a conclusion is erroneous because, as set forth above, what constitutes direct or indirect contempt depends upon whether or not the contumacious conduct was committed in the presence of the court. It is clear from the other findings in the court's September 14 order that the court believed that the contumacious conduct occurred prior to, and precipitated, the filing of the January 9, 1984, agreed order, and that, but for Kepple's misrepresentations, defendant would not have agreed to continue child support payments for Samuel until his alleged graduation in June of 1984.

That the contempt was indirect is evident from the fact that the contumacious conduct occurred outside the presence of the court and that it was based on facts outside the personal knowledge of the judge, which facts had to be determined by the taking of testimony. Additionally, the court in a later order (November 15, 1984) made reference to its October 15, 1984, order in which it found Kepple guilty of "indirect criminal contempt."

As the criminal contempt, therefore, was indirect, Kepple was entitled to a formal hearing on the contempt charges and to all appropriate constitutional rights, including notice, reasonable opportunity to defend, assistance of counsel, a reasonable doubt standard of proof, and the privilege against self-incrimination. (*Aurora Steel Products v. United Steelworkers of America* (1981), 94 Ill. App. 3d 97, 102, 418 N.E.2d 492; *Armentrout v. Dondanville* (1979), 67 Ill. App. 3d 1021, 1027, 385 N.E.2d 829; *People v. Marcisz* (1975), 32 Ill. App. 3d 467, 473, 334 N.E.2d 737.) Being given only the opportunity to testify in one's own behalf fails to satisfy these constitutional requirements. (*People v. Pincham* (1976), 38 Ill. App. 3d 1043, 1046, 350 N.E.2d 67.) Here, in our opinion, Kepple was not given a full and proper hearing.

At the September 12 hearing on defendant's section 2—1401 amended petition (at which no court reporter was present), it apparently became evident to the trial judge that misrepresentations regarding Samuel's schooling had been made to defendant either by plaintiff or by her attorney, Kepple. A bystander's report for this hearing, prepared by Kepple, was not certified by the court. At a hearing conducted on March 19, 1985, to consider the adoption of this report, the court specifically stated that it did not agree with the report. Counsel for defendant was permitted to comment on the contents of the bystander's report, pointing out wherein he agreed and

disagreed with Kepple's version. At the conclusion of this hearing the court adopted, as its own, defense counsel's version of the September 12 proceedings. As brought out at the hearing to review the bystander's report, the trial judge was uncertain at the time of the September 12 hearing which party, the plaintiff or her attorney, Kepple, was guilty of making false representations to defendant and his attorney. At that time the court then set a hearing for October 15 to consider sanctions to be imposed against "the guilty party." In fact, at the October 15 hearing the court stated several times on the record that the hearing was designed specifically for the purpose of determining "sanctions." Yet, prior to this hearing, no one, plaintiff or Kepple, had yet been held in contempt of court.

At the October 15 hearing the court called, as its witness, William Bochte, the attorney who was involved in advising the defendant to agree to the order of January 9, 1984, and the court permitted this attorney to admit into evidence a letter written by Kepple regarding the settlement offer that led to the agreed order. Also, the court called the plaintiff as its witness. Although Kepple was allowed to examine these witnesses, he did not present any witnesses of his own nor did he have assistance of counsel. The record reveals that he was sworn in as a witness but that his testimony was in the nature of a narrative. Our reading of the October 15 proceeding leads us to conclude that Kepple was adjudged in contempt and sanctioned in a summary manner. Although this type of summary procedure is permissible when a contemnor's conduct constitutes direct contempt, it is inappropriate when the contumacious conduct constitutes indirect contempt, unless the indirect contempt is admitted by the contemnor in open court. (*People v. Gholson* (1952), 412 Ill. 294, 299, 106 N.E. 333; *Sunset Travel, Inc. v. Lovecchio* (1983), 113 Ill. App. 3d 669, 674, 447 N.E.2d 891.) Here, Kepple strongly denied that he intended to defraud defendant's attorney and defendant by the representations regarding Samuel's schooling. Under circumstances characterized as indirect contempt, the law requires that the alleged contemnor be granted all due process rights, enabling him to be given a reasonable opportunity to defend against the charge. In light of the summary nature of the October 15 proceedings, we conclude that Kepple was denied his constitutional rights and that this cause should be remanded for a full and proper hearing on the issue of Kepple's indirect criminal contempt. This conclusion obviates the need to consider whether Kepple's contumacious conduct was proved beyond a reasonable doubt.

We note, however, that if, on remand, Kepple is found guilty be-

yond a reasonable doubt of contempt, consideration should be given by the trial court as to whether the imposition of a $500 fine, payable to defendant's attorneys for fees, is proper. Such a fine appears to be a remedial, rather than a penal, remedy, and, thus, in the nature of compensatory damages.

In a civil contempt proceeding in Illinois, the court may imprison or fine for contempt of its orders, but it is without authority to recompense an aggrieved party for his damages. (*Eberle v. Greene* (1966), 71 Ill. App. 2d 85, 93, 217 N.E.2d 6.) The theory behind this rule is that civil contempt is a punishment for an affront to the authority of the court and that any fine imposed, therefore, should be paid to the public and not to the complainant in the contempt proceeding. (*Round Lake Sanitary District v. Basic Electronics Manufacturing Corp.* (1978), 60 Ill. App. 3d 40, 43, 376 N.E.2d 436.) Nevertheless, it has been held to be an appropriate remedy, in both civil and criminal contempt cases, to require the contumacious party to bear the reasonable costs, as well as attorney fees, of the contempt proceeding, especially when a private litigant brings the fact of an indirect contempt before the court. (*Frank B. Hall & Co. v. Payseur* (1981), 99 Ill. App. 3d 857, 862, 425 N.E.2d 1002.) Thus, if after a full and proper hearing Kepple is found to be guilty of indirect criminal contempt, the trial court should determine if it is proper, under the facts of the case, to impose, as punishment, a fine designated as payment for defendant's attorney fees or if the fine should be paid directly to the court.

■ In regard to the contempt issue, plaintiff also claims that the trial judge had become personally embroiled in the contumacious conduct and, therefore, should have recused himself for bias. However, the record does not suggest or reveal bias or prejudice on the part of the trial judge against plaintiff or against her attorney, Kepple. Furthermore, this judge was not the same judge who signed the January 9 agreed order so as to feel personally deceived and angered by Kepple's misrepresentations in that order. That the judge presiding at the October 15 hearing found the misrepresentations made by Kepple to defendant to constitute unprofessional conduct and a derogation of the court system did not indicate the judge was biased against Kepple. Thus, we deem it unnecessary on remand that the contempt issue be heard by another judge.

■ Plaintiff's second contention is that the trial court erred in granting defendant's amended section 2—1401 petition. The purpose of a section 2—1401 petition (Ill. Rev. Stat. 1983, ch. 110, par.2—1401(a)) is to provide relief from final judgments after 30 days from

entry of the judgment by bringing to the trial court's attention facts not of record which, if known by the trial court at the time judgment was entered, would have prevented its execution. (*Manning v. Meier* (1983), 114 Ill. App. 3d 835, 837-38, 449 N.E.2d 560.) To warrant relief a petitioner must show that he possesses a meritorious defense or claim, that he has exercised due diligence in presenting this defense or claim, and that through no fault or negligence of his own an error of fact or a valid defense or claim was not presented to the trial court at the time the challenged judgment was entered. *Manning v. Meier* (1983), 114 Ill. App. 3d 835, 838, 449 N.E.2d 560; *Stallworth v. Thomas* (1980), 83 Ill. App. 3d 747, 750, 404 N.E.2d 554.

Plaintiff contends that defendant's amended petition should have been dismissed because defendant neither exercised due diligence in bringing his petition nor presented a meritorious defense. Additionally, plaintiff maintains that defendant's petition should have been dismissed due to defendant's own negligence in discovering the error of fact regarding his son's schooling. Plaintiff claims defendant's reliance on plaintiff's representations that their son was attending high school was unreasonable and that defendant should have verified whether his son was still enrolled in school.

It is not entirely clear from the record why defendant's petition was not brought until July 1984, although his discovery that his son no longer attended high school was made in February 1984. Although at first glance, this delay provides merit to plaintiff's claim of lack of due diligence, the question of due diligence need not be considered in a vacuum. (*Manny Cab Co. v. McNeil Teaming Co.* (1975), 28 Ill. App. 3d 1014, 1019, 329 N.E.2d 376.) When justice and fairness require, a judgment may be vacated even though there may have been a lack of due diligence. (*Manning v. Meier* (1983), 114 Ill. App. 3d 835, 838, 449 N.E.2d 560; *Hiram Walker Distributing Co. v. Williams* (1981), 99 Ill. App. 3d 878, 881, 426 N.E.2d 8.) Here, even if the requirement of due diligence was not satisfied, we believe justice favored the granting of defendant's petition.

It is evident from the record that defendant possessed a meritorious defense, as plaintiff and her attorney represented to defendant that Samuel would graduate from high school in June 1984. Based on this representation, defendant agreed to continue child support payments from January 1984 until Samuel's graduation, even though Samuel turned 18 in December 1983 and defendant's legal obligation to support his son ceased at that time. (*Horzely v. Horzely* (1979), 71 Ill. App. 3d 542, 546, 390 N.E.2d 28.) That Samuel would graduate in 1984 was clearly a false representation. Samuel had not attended high

school since December 1982. Even if it had been shown that Samuel intended to return to school in January 1984, it would have been impossible for him to complete nearly two years of schooling by June 1984 and graduate. We interpret plaintiff's misrepresentation as strictly an attempt by plaintiff and her attorney to get defendant to continue making child support payments when, in fact, plaintiff was no longer eligible for such payments.

In determining whether a section 2—1401 petition should have been allowed, all the circumstances of the proceeding dealing with it should be considered, including the conduct of the party opposing the petition and of the party's counsel. (*Uptown Federal Savings & Loan Association v. Kotsiopoulos* (1982), 105 Ill. App. 3d 444, 451, 434 N.E.2d 476; *Manny Cab Co. v. McNeil Teaming Co.* (1975), 28 Ill. App. 3d 1014, 1019, 329 N.E.2d 376.) Here, the conduct of plaintiff and her attorney clearly established that the court was correct in granting defendant's petition for relief from payments made by defendant from January 9, 1984 (the date of the agreed order), to June 1, 1984 (the date of Samuel's alleged graduation), despite any claim of lack of due diligence.

■ Plaintiff's last contention is that the trial court erred in finding that Samuel Wilde was an emancipated minor. On December 3,1984, a hearing was conducted on defendant's petition to terminate child support for the period of time from December 1982, when Samuel quit high school, until January 1984. Defendant sought credit for all child support payments made since December 1982. The trial court granted the petition, based on its prior determination that Samuel was an emancipated child as of December 1982, because he was working full time and no longer attending school.

At the December 3 hearing, defendant testified that the child support payments made during the period in question were made so that his son could finish high school and that the payments were not intended as a gift either to his son or to plaintiff. Plaintiff's counsel, Kepple, argued that the payments were made for the support of Samuel, which included feeding and clothing him, irrespective of whether Samuel was attending school. Kepple maintained that support could not be terminated simply by showing that a child is no longer in school. According to Kepple, other factors, besides a child's enrollment in school, must be considered in terminating child support payments. The court retorted that Samuel's attendance at school was only one of the factors it had considered in declaring that Samuel was emancipated and that its finding was based on all the testimony it had heard at the September 12, 1984, hearing.

Section 510(c) of the Illinois Marriage and Dissolution of Marriage Act provides in relevant part:

"Unless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child ***." (Ill. Rev. Stat. 1983, ch. 40, par. 510(c).)

Although the intent of section 510(c) is clearly to permit the court to order support to continue after emancipation, by its terms it could allow the court to cut off support prior to the child's emancipation upon attaining age 18. (*In re Marriage of Donahoe* (1983), 114 Ill. App. 3d 470, 474, 448 N.E.2d 1030; *In re Marriage of Smith* (1981), 100 Ill. App. 3d 1126, 1132, 427 N.E.2d 1262.) However, this court has previously held that, given the parents' legal duty to support their children, extraordinary circumstances must exist before allowing support to terminate before emancipation by reaching the age of majority. *In re Marriage of Donahoe* (1983), 114 Ill. App. 3d 470, 475, 448 N.E.2d 1030; *In re Marriage of Smith* (1981), 100 Ill. App. 3d 1126, 1132-33, 427 N.E.2d 1262.

In *In re Marriage of Donahoe* (1983), 114 Ill. App. 3d 470, 448 N.E.2d 1030, a father sought to have his 17-year-old daughter declared emancipated because she refused to finish high school and was not working. The daughter's testimony showed that she worked between 15 and 20 hours a week, lived with her mother, and was unable to support herself on the money she earned. The trial court found that the daughter's voluntary action of dropping out of school and taking a part-time job resulted in a course of conduct designed to obtain economic self-sufficiency and terminated the father's obligation to pay child support. This appellate court found that the daughter was not emancipated because she was not self-supporting nor did she seek to be financially independent. Additionally, she had not abandoned her mother's home, a factor, this court pointed out, which can be considered relevant. 114 Ill. App. 3d 470, 476, 448 N.E.2d 1030.

The circumstances of the instant case are somewhat comparable to those of *In re Marriage of Donahoe* (1983), 114 Ill. App. 3d 470, 448 N.E.2d 1030, and, like *Donahoe*, cannot be considered so extraordinary as to permit defendant's support of his son to have been terminated before the son reached majority. Here, defendant's son had quit school but, contrary to defendant's contentions in the trial court and to the judge's conclusion, the evidence presented at both the October 15 and the March 19, 1985, hearing (on the bystander's report of the September 12, 1984, hearing) did not establish that the son was working full-time or was self-supporting. No testimony was presented as to

how many hours Samuel worked per week, what his earnings were, and whether they were sufficient to support him. There was some testimony that the son had held several jobs but that he had quit because of lack of transportation. Additionally, plaintiff stated that her son would work off and on, being employed a couple of months and then being off a couple of months. Further, no evidence was presented that Samuel desired to be financially independent after he dropped out of school or that he had abandoned his mother's home.

From the evidence found in the record, we conclude that the trial court erred in finding that Samuel was emancipated prior to his reaching 18 in December 1983. Since the granting of defendant's petition to terminate child support from December 1982 to January 1984 was based on the court's erroneous determination that Samuel became emancipated as of December 1982, we find that the order terminating defendant's obligation to pay child support during that period be vacated.

For the reasons set forth above, we reverse the order of the circuit court of Kane County finding plaintiff's attorney, Kepple, guilty of indirect criminal contempt and remand the cause for a full and proper hearing on the contempt issue. Additionally, we affirm the trial court's order granting defendant's section 2—1401 amended petition, and we vacate the order granting defendant's petition to terminate child support during the period from December 1982 to January 1984.

Reversed in part and remanded; affirmed in part; vacated in part.

NASH, P.J., and LINDBERG, J., concur.