CHARLES A. HARPER, Plaintiff-Appellee, v. MISSOURI PACIFIC RAILROAD COMPANY et al., Defendants-Appellants.

Fifth District   No. 5—95—0514

Opinion filed August 6, 1996.

Thomas E. Jones and Leslie G. Offergeld, both of Walker & Williams, P.C., of Belleville, for appellants.

Jerome J. Schlichter, Roger C. Denton, Steven J. Stolze, and Steven L. Groves, all of Schlichter, Bogard & Denton, of Fairview Heights, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

A preliminary injunction was entered in August 1993, after defendants instituted a policy concerning the investigation of claims of injured employees brought pursuant to the Federal Employers' Liability Act (the Act) (45 U.S.C. §§ 51 through 60 (1994)). In *Harper v. Missouri Pacific R.R. Co.*, 264 Ill. App. 3d 238, 636 N.E.2d 1192 (1994) (hereinafter *Harper I*), we upheld in all respects the entry of the trial court's preliminary injunction enjoining defendants' policy of requiring notice of and prior consent to interviews with railroad employees who had information concerning claims under the Act, except we did not allow for *ex parte* interviews of defendants' employees when on defendants' property during the working hours of such employees. Defendants now appeal from the order entering a permanent injunction and from the trial court's entry of an order of contempt against defendants for an alleged violation of the preliminary injunction order. Defendants raise the following issues: (1) whether the trial court erred in admitting former testimony, given at the preliminary injunction hearing, as evidence at the trial for the permanent injunction, (2) whether the Act gives plaintiff's attorneys the right to communicate *ex parte* with defendants' employees, (3) whether plaintiff sustained his burden of proving he would suffer irreparable harm if his attorneys could not interview, *ex parte*, managerial, supervisory, or office employees, (4) whether the trial court's finding that defendants engaged in affirmative conduct which had the effect of inhibiting employees with knowledge of facts incident to plaintiff's claim from furnishing information to his attorneys was against the manifest weight of the evidence, (5) whether the scope of the permanent injunction is overbroad, (6) whether the trial court erred in holding defendants in contempt, (7) whether the trial court's finding that the revision of a work rule violated the preliminary injunction order was against the manifest weight of the evidence, (8) whether the trial court's finding that the rule was revised in wilful violation of the preliminary injunction order was against the manifest weight of the evidence, (9) whether the trial court erred in ordering

defendants to pay plaintiff $150 per day from April 10, 1994, through the day the rule was rescinded or revised, and (10) whether the letters required by the contempt order are unnecessary and prejudicial to defendants. We affirm in part, reverse in part, and remand with directions.

Since we have previously set forth the facts pertaining to the entry of the preliminary injunction order (see *Harper I*), we need not repeat those facts here. Instead, we choose to recite only the additional facts necessary for an understanding of the instant matter. Please refer to *Harper I* for the history of the instant case.

## ISSUES

■ The first issue we are asked to consider is whether the trial court erred in admitting former testimony, given at the preliminary injunction hearing, as evidence at the trial for a permanent injunction. Defendants assert that the testimony of a witness at a former trial is not admissible in a subsequent proceeding of the same action where there is no showing (1) that the witness is unavailable in a legal sense, and (2) why the witness's evidence deposition could not have been taken if the proponent of the testimony exercised due diligence. Defendants argue severe prejudice by the admission of the former testimony because, defendants claim, such testimony was given before they had an opportunity to conduct discovery and to prepare for a meaningful cross-examination. Plaintiff responds that in the instant case evidence from a prior hearing of the same proceeding was simply incorporated by the trial court acting as a fact finder. Plaintiff insists that this requires no citation because what was done here is no different from what occurs daily in bench-tried cases wherein judges take testimony in intervals separated by time.

Plaintiff is correct that the cases cited by defendants are distinguishable from the case at bar because none deal with the incorporation of evidence from a preliminary injunction into a hearing on a permanent injunction. Plaintiff, on the other hand, does provide us with cases in which the evidence from a preliminary injunction hearing was incorporated into evidence at the hearing for a permanent injunction. See *Hess v. Clarcor, Inc.*, 237 Ill. App. 3d 434, 603 N.E.2d 1262 (1992). However, in *Hess*, the parties stipulated to the incorporation of such evidence. *Hess*, 237 Ill. App. 3d at 446, 603 N.E.2d at 1271. *Peoples Energy Corp. v. Illinois Commerce Comm'n*, 142 Ill. App. 3d 917, 492 N.E.2d 551 (1986), also allowed for the incorporation of testimony and exhibits from the preliminary injunction hearing into the hearing for a permanent injunction. In that case, the City of Chicago was permitted to intervene in the action as a defendant-

counterplaintiff after the conclusion of the preliminary hearing. The city argued on appeal that the testimony and exhibits from the preliminary injunction hearing should not have been admitted at the hearing for the permanent injunction. However, since none of the original parties objected and because the city's intervention was subject to the express condition that it be bound by all prior orders or judgments and all evidence previously received, our colleagues on the First District Appellate Court rejected the city's argument. *Peoples Energy Corp.*, 142 Ill. App. 3d at 935-36, 492 N.E.2d at 565. The court also noted that its decision was based upon the facts that the city was given the opportunity to cross-examine the plaintiff's witnesses and that the city made no specific claims of actual prejudice. *Peoples Energy Corp.*, 142 Ill. App. 3d at 936, 492 N.E.2d at 565.

Here, defendants did specifically object to the incorporation of evidence from the preliminary injunction hearing into the permanent injunction hearing. However, we find that because the trial judge was the same in both hearings, no error was committed in allowing evidence from the preliminary injunction hearing to be incorporated into the hearing on the permanent injunction. While defendants claim prejudice due to the fact that such cross-examination occurred prior to conducting discovery, the record and briefs contain no explanation as to how defendants were actually prejudiced. Defendants were allowed to cross-examine plaintiff's witnesses at the preliminary injunction. Moreover, defendants were certainly within their right to recall any witnesses from the preliminary injunction hearing, but they chose not to do so. Defendants would obviously like this case to drag on interminably, but the trial court rightly chose not to hear repetitive evidence.

The second issue raised by defendants is whether the Act gives plaintiff's attorneys the right to communicate *ex parte* with defendants' employees. See 45 U.S.C. § 60 (1994). Defendants argue that we did not sufficiently address this issue in *Harper I* but only considered it at a preliminary stage. We cannot agree. See *Harper I* for a complete discussion of this issue. *Harper I*, 264 Ill. App. 3d at 251, 636 N.E.2d at 1201-02.

We note that the standards of review in cases involving preliminary injunction and permanent injunction are indeed different, as defendants contend, and thus, *Harper I* cannot be said to be the law of the case in the instant matter. In ruling on a preliminary injunction, we must determine whether the trial court abused its discretion in finding that the petitioner demonstrated a *prima facie* case that there is a fair question as to the existence of the rights claimed; that the circumstances lead to a reasonable belief that the petitioner will

probably be entitled to the relief sought if evidence sustains the allegations in the petition; and that the status quo should be maintained until the case can be decided on the merits. *Dixon Ass'n For Retarded Citizens v. Thompson*, 91 Ill. 2d 518, 524-25, 440 N.E.2d 117, 120 (1982). In order for the issuance of a permanent injunction to be upheld on appeal, the trial court's determination is reviewed by a stricter standard. The question is whether a trial court's decision is contrary to the manifest weight of the evidence. A trial court's judgment is against the manifest weight of the evidence only if the opposite result is clearly evident. *Gerber v. Hamilton*, 276 Ill. App. 3d 1091, 659 N.E.2d 443 (1995); see also *Hamer Holding Group, Inc. v. Elmore*, 244 Ill. App. 3d 1069, 1075-77, 613 N.E.2d 1190, 1195-96 (1993). Here, we find defendants' tactic of ignoring our decision in *Harper I* disingenuous, as there is nothing in the record from the hearing on the permanent injunction which indicates we were mistaken in *Harper I*. The witnesses who testified for defendants simply did not provide strong enough testimony to overcome the evidence produced by plaintiff that among railroad employees an atmosphere of intimidation prevailed.

■ The third issue raised by defendants is whether plaintiff sustained his burden of proving he would suffer irreparable harm if his attorneys could not interview, *ex parte*, managerial, supervisory, or office employees. Again, we previously addressed this issue sufficiently in *Harper I* and need not address it herein. See *Harper*, 264 Ill. App. 3d at 251-52, 636 N.E.2d at 1202-03. After reviewing the evidence presented by defendants at the hearing on the permanent injunction, we find it insufficient to change our previous determination of this issue in *Harper I*.

■ The fourth issue raised by defendants is whether there was sufficient evidence to establish that defendants engaged in any affirmative conduct which had the effect of inhibiting employees with knowledge of facts incident to plaintiff's claim from furnishing information to plaintiff's attorneys. Likewise, we believe we sufficiently addressed this issue in *Harper I* when we discussed the fact that plaintiff's attorney, Roger Denton, testified that his law firm stopped its usual and customary practice of interviewing all railroad employees regarding claims under the Act because of the letters it received from defendants threatening ethical charges. *Harper*, 264 Ill. App. 3d at 251, 636 N.E.2d at 1202. Moreover, in *Harper I* we found that plaintiff had, in fact, already established, by a preponderance of the evidence, that the general atmosphere of the railroad intimidates railroad employees from furnishing evidence in cases brought under the Act (*Harper*, 264 Ill. App. 3d at 252-53, 636 N.E.2d at 1203), and

that by virtue of defendants' intimidating actions, it would be difficult for plaintiff to find employees ready to testify on plaintiff's behalf, thus establishing the need for an injunction. *Harper I*, 264 Ill. App. 3d at 253, 636 N.E.2d at 1203.

None of the evidence presented by defendants on the hearing for the permanent injunction changes our decision from *Harper I*. In fact, a complete review of the transcript from the hearing on the permanent injunction supports our determination. First, many of defendants' own witnesses corroborated plaintiff's testimony that in the past they had been told that if they saw a colleague injured on the job, "they shouldn't see it." Wallace Deal testified that he heard of other employees who had been intimidated or harassed by the railroad for reporting injuries. Deal stated that even today there is an atmosphere of fear which exists for reporting injuries, especially among laborers. Second, while all of defendants' witnesses at the permanent injunction hearing agreed that their present supervisor had not espoused a belief in not reporting accidents, the overall tone of the testimony leads us to believe that a hostile environment remains. For example, defense witness Williams refused to talk to plaintiff's attorneys prior to the instant hearing but did talk to defense attorneys. Robert Tritch, also defendants' witness, testified that while he has never been personally intimidated about reporting an accident, he believes an atmosphere of intimidation *still* exists and personally knows of some railroad employees who have been intimidated or discouraged from talking to attorneys for an injured worker. Third, the new rule issued by the railroad on April 10, 1994, was found worrisome by some of defendants' employees. For example, Ali Jones testified that with such a rule in effect he would not talk to an injured worker's attorney without first getting an okay from a supervisor. Joe Crow and Elmer Parham, who testified via deposition, acknowledged that the revised rule regarding employee statements concerns them. The evidence presented by defendants at the hearing on the permanent injunction does not change our previous determination in *Harper I* with regard to this issue.

■ The fifth issue raised by defendants is whether the scope of the permanent injunction is overbroad. Defendants insist that if we affirm the permanent injunction, we must limit such relief to plaintiff's case. We disagree.

Again, we believe we sufficiently addressed this issue in *Harper I*. In that case the only thing we found to be overly broad was the fact that the preliminary injunction allowed for *ex parte* communications with defendants' employees at any time or any place. We found the injunction needed to be limited in that such interviews should not

take place on defendants' property or during the working hours of said employees. *Harper I*, 264 Ill. App. 3d at 253-54, 636 N.E.2d at 1204. However, to the extent that the preliminary injunction applies across the board to plaintiff's attorneys and allows them free access to conduct unrestricted, *ex parte* interviews of any and all railroad employees, we found no error but in fact agreed with the trial court's ruling. *Harper I*, 264 Ill. App. 3d at 253, 636 N.E.2d at 1203.

While it is well settled that courts may not issue a blanket order enjoining any violation of a statute upon a showing that an act has been violated in some respects, courts do possess the authority to restrain violations similar to those already committed. *Interstate Commerce Comm'n v. Keeshin Motor Express Co.*, 134 F.2d 228, 231 (7th Cir. 1943). Here, the trial court was merely restraining defendants from committing additional violations of the Act. Limiting an injunctive order to the instant plaintiff would be an invitation to defendants to commit similar violations in the future. Defendants need to understand that we find these actions reprehensible and an affront to the orderly administration of justice in cases brought under the Act. We strongly believe that any court in the country would be incensed by defendants' flagrant violations of the Act. The scope of the injunction is not overly broad.

■ The sixth issue we are asked to consider is whether the trial court erred in holding defendants in contempt. Defendants contend that we must vacate the contempt order because when the trial court found defendants in contempt for violating the preliminary injunction order on June 30, 1995, the preliminary injunction order was no longer in existence, as it was superseded by the permanent injunction order. Plaintiff responds, and we agree, that this argument is ludicrous, as the court's contempt order was based on the hearing held on March 7, 1995, at which time the preliminary injunction was in effect.

The record indicates that on December 9, 1993, the trial court entered a preliminary injunction order. The trial court enjoined defendants from interfering with *ex parte* communication by plaintiff's attorneys with railroad employees regarding claims brought under the Act. Later, the trial court found that defendants deliberately chose to continue the enjoined policy, and on March 26, 1994, as a result of this behavior the trial court held defendants in contempt, finding defendants' contempt to be a serious rejection of the trial court's authority and a continuation of defendants' intimidation of railroad employees. The trial court then found that defendants' revision of their rule regarding employee statements, which was effective on April 10, 1994, and which eliminated the clause "persons

in interest," constituted a "wilful and flagrant violation of [the trial court's] preliminary injunction order." Therefore, the preliminary injunction was in effect at the time defendants behaved contumaciously. Accordingly, we find that the trial court's contempt order of June 30, 1995, was valid even though the permanent injunction issued on that date.

■ The seventh issue we are asked to consider is whether the trial court's finding that the revision to the work rule violated the preliminary injunction order was against the manifest weight of the evidence. The eighth issue raised by defendants is whether the trial court's finding that the rule was revised in wilful violation of the preliminary injunction order was against the manifest weight of the evidence. Because these issues are so similar, we choose to consider them together. Defendants contend that plaintiff failed to sustain his burden of proving that the revision of the work rule was made in violation of the preliminary injunction order. Defendants also argue that the evidence showed that the rule was revised before the injunction was issued and the committee that revised the rule was unaware of the section of the Act at issue. Plaintiff responds that he met his burden, as it is inconceivable that the revision was done for any other purpose than to attempt to prevent defendants' employees from providing information to injured parties' attorneys. We agree with plaintiff.

Defendants' former rule 807(2) states as follows:

"Except when authorized by proper authority:

(2) Information as to the facts pertaining to the injury or death of an employee must not be given to anyone except a person in interest, such as the injured employee, or an immediate relative of the injured or deceased employee, or to an officer of the law."

Defendants' revised rule 1.2.6, effective April 10, 1994, provides:

"Except when authorized by the proper manager:

Information about the facts concerning the injury or death of an employee may be given only to the injured or deceased employee, an immediate relative of the injured or deceased employee, an authorized representative of the railroad, or an officer of the law."

The burden of proof of showing contempt is on the party bringing the request to show cause, and it must be shown by a preponderance of the evidence. *In re Marriage of LaTour*, 241 Ill. App. 3d 500, 608 N.E.2d 1339 (1993). Noncompliance with an order is a *prima facie* showing of contempt. *In re Marriage of Logston*, 103 Ill. 2d 266, 285, 469 N.E.2d 167, 175 (1984). It is the trial court's function to weigh evidence and to make findings of fact. Unless we can say that the trial

court's holding is manifestly erroneous, we will not disturb a trial court's ruling. *Southern Illinois Medical Business Associates v. Camillo*, 208 Ill. App. 3d 354, 369, 567 N.E.2d 74 (1991). "In determining whether there has been a violation of a court order, the order must be construed with reference to the context in which it was issued and the purpose for which it was requested." *Doe v. Lutz*, 253 Ill. App. 3d 59, 64, 625 N.E.2d 325, 329 (1993).

The trial court's preliminary injunction order was clear. Its purpose was to prohibit defendants from "carrying out their practice, policy, and use of letters requiring knowledge and consent of employee witness interviews concerning facts incident to FELA claimants' injuries, or in any way interfering with their employees regarding such claims." In revising the rule regarding employee statements, defendants eliminated the clause "persons in interest." The trial court in its order dated December 9, 1993, noted that attorneys who represented employees asserting claims under the Act are "persons in interest." The trial court obviously believed that the removal of the words "persons in interest" approximately four months after the December 9, 1993, order was not a mere coincidence and chose to disregard Robert Pugmire's testimony that the change was made in order to make the rule simpler and easier to understand and that the "rules committee" did not consider rule 1.2.6 a change from the prior rule. "Where an evaluation of credibility of the weight of the evidence was made by the circuit court, a court of review cannot substitute its judgment for that of the trier of fact unless the evidence is so unreasonable, improbable, or unsatisfactory as clearly to require a different conclusion." *People v. City of East St. Louis*, 206 Ill. App. 3d 626, 639, 564 N.E.2d 1372, 1381 (1990). Here, we agree with the trial court's determination that the revision was done in wilful violation of the preliminary injunction.

■ The ninth issue we are asked to address is whether the trial court erred in ordering defendants to pay $150 per day from April 10, 1994, through the day the rule was revised or rescinded. Defendants argue that the award cannot be characterized as an award of attorney fees and costs, but rather the $150 per day was intended to be a penalty in the form of damages payable to plaintiff, which is improper in contempt proceedings. Further, defendants contend that the issue of whether the amount imposed by the trial court was inappropriate for a fine payable to the public was not an issue raised by the contempt order and, thus, we cannot consider that issue. Plaintiff responds that the trial court was within its discretion to order payment of $150 per day and that such payment should be considered attorney fees and costs and whatever amount which can

be considered unreasonable as attorney fees is still payable to plaintiff because plaintiff has been irreparably damaged to the extent that employee witnesses to plaintiff's injury have been intimidated by defendants' flagrant contempt of court. Assuming, *arguendo*, that the $150 per day is found to be a fine, plaintiff responds that the fine imposed should be paid to the public as opposed to plaintiff.

In a civil contempt proceeding, which means that the sanction imposed is strictly coercive (*People ex rel. Chicago Bar Ass'n v. Barasch*, 21 Ill. 2d 407, 410, 173 N.E.2d 417, 418 (1961)), a court may imprison or fine for contempt of its orders but is without authority to recompense an aggrieved party for his damages. *In re Marriage of Wilde*, 141 Ill. App. 3d 464, 473, 490 N.E.2d 95, 101 (1986). It is well settled that in Illinois civil contempt is not a private remedy but is punishment for an affront to the authority of the court, and hence, any fine imposed is payable to the public treasury and not to the plaintiff. *Frank B. Hall & Co. v. Payseur*, 99 Ill. App. 3d 857, 863, 425 N.E.2d 1002, 1006 (1981), citing *Rothschild & Co. v. Steger & Sons Piano Manufacturing Co.*, 256 Ill. 196, 99 N.E. 920 (1912). It is appropriate in both civil and criminal contempt cases to require the contumacious party to bear the reasonable costs and attorney fees of a contempt proceeding, especially where, as here, a private litigant brings before the court the fact of an indirect contempt. *Wilde*, 141 Ill. App. 3d at 473, 490 N.E.2d at 101; see also *Payseur*, 99 Ill. App. 3d at 862, 425 N.E.2d at 1006.

In the instant case, the trial court ordered defendants to pay plaintiff $150 a day for every day from April 10, 1994, through the day the rule was revised or rescinded. We agree with defendants that the result of such a ruling was to levy a fine payable to plaintiff, which is inappropriate in Illinois in cases of indirect civil contempt. The trial court did not schedule a hearing to determine the reasonable costs and attorney fees borne by plaintiff in conjunction with the contempt proceeding. Therefore, we believe it appropriate to reverse that portion of the trial court's contempt order which requires defendants to pay the $150 per day to plaintiff. On remand, we order a hearing to determine plaintiff's reasonable costs and attorney fees associated with the contempt proceeding. That amount should be paid directly to plaintiff. The $150 per day ordered by the trial court should go directly to the public coffers via the clerk of the circuit court.

■ The final issue we are asked to consider is whether the court-ordered letters are unnecessary and prejudicial to defendants. Defendants contend that the letter required to be sent to each of defendants' employees is unnecessary if rule 1.2.6 is revised to

conform to the prior rule, since any changes in the rules will be communicated to the employees by defendants, as is defendants' usual procedure. Additionally, defendants contend the content of the letters is prejudicial to defendants because the content does not provide an exception for interviews on railroad property or during employees' working hours. Defendants also complain that the letters require them to instruct their employees to disregard rule 1.2.6 in its entirety, which they argue is inappropriate since the entire rule was not the subject of the rule to show cause. Specifically, another portion of rule 1.2.6 provides:

> "Information in the file or in other privileged or confidential reports of the railroad concerning accidents or personal injuries may be given only to an authorized representative of the railroad."

Defendants maintain that if the letters are sent, their employees would be invited to purge defendants' files and disclose confidential reports and information to claimants' attorneys. Plaintiff responds that the letters are appropriate and within the trial court's discretion to order in light of defendants' repeated violations of court orders.

The following letter was ordered sent to all defendants' employees:

> "Enclosed is a copy of an Order entered on January 5, 1995[,] by the Honorable Daniel J. Stack of the Circuit Court for the Third Judicial Circuit, Madison County, Illinois. The Missouri Pacific Railroad Company and the Union Pacific Railroad Company have been enjoined by the Court from in any way preventing you from providing information about employee injuries to the injured employee's attorney and have been ordered to rescind or revise Rule 1.2.6 regarding furnishing information. You should disregard any rule promulgated or adopted by the company which prevents you from providing information about employee injuries to their attorneys. Specifically, Rule 1.2.6 regarding statements should be disregarded."

Defendants cite no case law to support their proposition that the letters ordered by the trial court are unnecessary or unduly prejudicial. Upon review of said letter, we cannot say that the trial court abused its discretion in ordering that copies be sent to all of defendants' employees. It is obvious from the trial court's June 30, 1995, order finding defendants in contempt that the trial court was outraged by defendants' actions in revising the rule regarding employee statements. We are unconvinced by defendants' argument that sending such letters is the equivalent of inviting defendants' employees to purge files and disclose confidential information. As plaintiff points out, the letters clearly state that rule 1.2.6 regarding

*statements* should be disregarded, thus limiting the inapplicability of the rule to that section only. Additionally, we note that confidentiality in employee files is implicit, and ordering further language to be added to the letter to state such a fact is in our estimation unnecessary. Therefore, we find no error in the trial court's decision to order said letters to be sent.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed in part and reversed in part, and the cause is remanded with directions. We order that the mandate issue *instanter. We order that defendants take the required actions immediately.* We see no valid reason for any further delay of enforcement of this injunction.

Affirmed in part and reversed in part; cause remanded with directions.

HOPKINS, P.J., and KUEHN, J., concur.