William R. Eberle and Marie C. Eberle, Plaintiffs and Counterdefendants-Appellees, v. William J. Greene and Onetta Mae Greene, Defendants and Counterclaimants-Appellants.

Gen. No. 65–53.

Third District.

May 19, 1966.

Rehearing denied June 10, 1966.

Harry B. Hoffman and Hollis W. Benjamin, of Peoria, for appellants.

F. B. Brian and Donald D. Rumley, of Toulon, and Harry C. Heyl, of Peoria, for appellees.

STOUDER, J.

This is an appeal from an order of the Circuit Court of Stark County finding Defendant Greene, guilty of contempt of court and finding Plaintiff Eberle, not guilty of contempt. The parties will be referred to as Plaintiff and Defendant although a counterclaim in which the Defendant is counterplaintiff and Plaintiff counterdefendant is also involved in this appeal. Defendant was committed to jail until he purges himself of contempt, and ordered to pay $6,257.81 to Plaintiff as damages.

This litigation originated as a controversy over the drainage of surface water over and across the abutting farms of the parties. On January 16, 1959, the Circuit Court of Stark County entered a decree in which it found that each party had improperly interfered with the surface water drainage. The decree directed that the Defendant restore the elevation and conditions existing along the division fence to those which existed in 1947, particularly describing removal and restoration of a dam near the mid point of the division fence. Defendant was ordered to maintain such 1947 conditions excepting modifications from natural causes. Plaintiff was ordered to discontinue discharging subsurface water into the surface drainage system and also to remove obstructions which interfered with the natural flow of surface drainage into an adjacent roadside ditch.

On appeal to the Supreme Court the 1959 decision of the Circuit Court was affirmed in Eberle v. Greene, 18 Ill2d 322, 163 NE2d 822. The facts giving rise to the controversy are set forth in the aforementioned Supreme Court opinion and do not need restatement in this opinion. After the Supreme Court had affirmed its decree, the Circuit Court, in September 1960, ordered writs of injunction against each party in the same terms as the decretal portion of the 1959 decree. In November 1960, Plaintiff commenced this proceeding for contempt, alleging that Defendant had failed to comply with the injunction. Defendant filed his answer denying Plaintiff's petition and counterclaimed that Plaintiff had failed to comply with the injunction against him. Hearing on the contempt matters was referred to a Special Master. The Master's report was set aside but no question of the propriety of such order is presented by either party in this appeal.

In October and November of 1963, upon application therefore, the court ordered that each party permit inspection of his property by the other. In December 1963, Defendant filed a petition alleging that Plaintiff had failed to comply with the inspection order. The petition requested that Plaintiff be cited for contempt of the inspection order, or, in the alternative that the evidence which Plaintiff had obtained in the inspection of Defendant's premises be suppressed. Plaintiff filed no responsive pleading to this petition.

In March 1964, Plaintiff filed his motion asking that the reference to a Special Master be vacated and that the matter be set for hearing before the court. Defendant filed an answer and countermotion asking that hearing be stayed pending hearings on his petition to suppress evidence and also on a pending collateral title action. The collateral title action referred to and described in the countermotion, was an action commenced by Defendant in October 1963, against Plaintiff. In said ac-

tion Defendant alleged that Plaintiff had rebuilt the east half of the division fence in 1948 and that the Defendant had discovered in 1963 that such portion of the fence was located as much as 12½ feet north of the common north-south boundary of the parties. No responsive pleading was filed to the answer and countermotion. On April 29, 1964, the court denied Defendant's motion for stay of hearing, revoked the reference to a Special Master, and set the contempt petitions for hearing on May 24, 1964, before the court.

Defendant's first two assignments of error are based on the court's order of April 29, 1964, which, in denying Defendant's countermotion, refused to stay the hearing on the main contempt actions as requested by Defendant. Defendant argues that since responsive pleadings were not filed either to his petition for suppression of evidence or to his countermotion for a stay of the hearing, the allegations of the countermotion are deemed admitted and the court's disregard thereof was error. In support of this contention Defendant relies on Illinois Revised Statutes 1963, chapter 110, paragraph 40(2) which provides, "Every allegation, except allegations of damages, not explicitly denied is admitted, unless the party states in his pleading that he has no knowledge thereof sufficient to form a belief, . . . ." In the application of this principle Laegeler v. Bartlett, 10 Ill2d 478, 140 NE2d 702, holds that if the affirmative defense of payment is not denied in a responsive pleading it is error for the court to disregard such affirmative defense.

██ The legal effect of undisputed allegations must be determined by the court. The petition for the suppression of evidence which Defendant filed in December 1961, alleged factually, violations by Plaintiff of the inspection order. Without necessarily determining the veracity of such allegations, we believe they were sufficient to require a determination by the Trial Court of their effect. As a pending preliminary matter, we believe

89

Defendant was entitled to a consideration of and a ruling on his petition prior to a hearing on the main actions. We find no support in the record as argued by Plaintiff that Defendant had waived such determination. On the contrary the matter was brought to the attention of the Trial Court at an appropriate time and regardless of the ultimate merits of his petition, some disposition should have been made of the matter.

With respect to the second portion of Defendant's answer and countermotion, namely that dealing with the pendency of a collateral title action, we believe that other considerations are involved. Defendant argues, based on the uncontradicted allegations in his answer and countermotion, that if the division fence is not located on the legally described boundary as found in the decree of 1959 then a latent ambiguity exists in said decree. It follows, according to Defendant, that the issue of latent ambiguity should be resolved by hearing his pending collateral action first, or, in the alternative, that such latent ambiguity, making compliance with the decree impossible, could and should be deemed a defense in the contempt action.

Even though we assume the truth of Defendant's allegations, namely that the east half of the division fence was improperly located, we do not find that the Trial Court committed any error in its rulings on Defendant's assertions. In the first place the decree of 1959 did not require any particular conduct by Defendant in relation to the east half of the division line fence. In the second place Defendant, by his own testimony as well as the evidence of others, claims full compliance with the court's decree. In this connection it is clear from the evidence that Defendant claimed full and complete compliance with the decree of 1959 long before his discovery of the apparent improper location of the eastern portion of the fence. Under such circumstances we can only conclude that the improper location of the east half of

the division line fence in fact did not have and could not have any effect on Defendant's conduct and hence the issue of latent ambiguity was immaterial.

Defendant next contends that the court erred in admitting and excluding evidence and that therefore its order finding Defendant guilty of contempt and Plaintiff not guilty of contempt was erroneous. In its decree of 1959 the Trial Court in its findings determined the dominant and servient surface water drainage relationships between the properties of the parties as it existed in 1947. The significant findings of said decree are, that in times of moderate or heavy rain, surface water from Plaintiff's property flowed under and through the division fence at various points of the west 90 rods thereof. Also at times of moderate or heavy rainfall, surface water from Plaintiff's property flowed under the division fence at the 90 rod point in a depression having width and depth, and further that the obstruction of said channel by a dam constructed by Defendant was improper. The decretal portion of the decree of 1959 and the injunction issued thereafter, ordered restoration of the conditions and elevations along the division fence line to those existing in 1947 and in particular directed removal of the dam as an incident to such restoration. Defendant was also permanently ordered to maintain such conditions along the division fence, excluding changes resulting from natural causes.

██ Where resort is had to contempt proceedings to secure obedience to the decree of a court, the merits of the original controversy cannot be relitigated. The court's inquiry is limited to a consideration of whether or not there has been obedience or compliance with its decree. The decree itself furnished the basis for the conduct required and only evidence relevant to such required conduct that is evidence of compliance or non-compliance is properly admitted and considered by the court. The determination of conditions along the divi-

91

sion fence as they existed in 1947 was the issue decided by the court in its decree of 1959 as set forth in the findings of the decree. Accordingly Defendant's obligation of restoration was limited to and measured by the conditions as found in the decree. Since reconsideration of the conditions existing in 1947 was not an appropriate issue in the contempt action we believe that the court properly excluded evidence offered by Defendant dealing with 1947 conditions along the division line. By the same token if evidence of 1947 conditions offered by Defendant was properly excluded like evidence offered and introduced by Plaintiff should have been excluded. From an examination of the record it appears that the court by permitting the interjection of considerable evidence of 1947 conditions failed to consistently adhere to the limited issue involved, namely compliance with its decree.

██ ██ That the court appears to have been unduly and improperly preoccupied with evidence as it related to 1947 conditions is shown by its ruling on the testimony of witnesses Halvorson and VanLaningham. Halvorson, a licensed land surveyor, testified that he had made a survey of Defendant's property in August of 1963 and had prepared a plat showing the elevations at points along and near the division line fence. Although Halvorson's plats were admitted into evidence the court sustained objections to questions asking for his description based on visual observation of the conditions along the division fence. The court based its ruling on the fact that the witness had no knowledge of the conditions as they existed in 1947. We are unable to understand the Trial Court's reasoning in excluding this witness's testimony. Evidence from which Defendant's conduct can be inferred subsequent to the decree of 1959 is material and relevant. What Defendant did or did not do in his efforts to comply with the 1959 decree is the issue. Likewise we believe that the court improperly

sustained objections to the testimony of VanLaningham. Again the court considered the lack of knowledge or absence of an opinion of 1947 conditions a disqualification. In addition, although this witness was an expert on soils, erosion and the like, the court did not consider the issue of natural changes along the fence row material and declined to hear testimony on this point. Since the 1959 decree itself referred to changes by natural causes, the issue was material and we do not believe this testimony should have been excluded because the court feared it "might be plagued by experts."

 Lastly we consider Defendant's contention that in a contempt action the award of damages to the Plaintiff is erroneous. In Nusbaum v. Retail Clerks' International Protective Ass'n, 227 Ill App 206, the court holds that in a civil contempt proceeding, injury is presumed from a violation of the court's decree and hence damages are not a proper issue. The enforcement of a court's decree by civil contempt is not the enforcement of a private right but rather the process of the court to secure obedience to its decrees, the benefit to the party invoking the aid of the court being merely incidental. In A. R. Barnes Co. v. Chicago Typographical Union No. 16, 232 Ill 402, 83 NE 932, the court states "There is no statute in this State which authorizes the appropriation of a fine imposed for a contempt of court, to the party injured by the act constituting the contempt or who prosecutes the proceeding for contempt." Our Supreme Court in Rothchild & Co. v. Stegar Piano Co., 256 Ill 196, 99 NE 920, reviewed the principles and rules governing civil contempt as applied by the Illinois Courts and rejected the applicability of federal law. The established rule in Illinois is that the court may imprison or fine for contempt of its orders but is without authority to recompense Plaintiff for his damages. Accordingly the award of damages in this case was erroneous.

93

Since we find error in the order of the Circuit Court of Stark County said order is reversed and the cause is remanded to said court with directions to proceed in accordance with the views herein expressed.

Reversed and remanded.

CORYN, P. J. and ALLOY, J., concur.