THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RICARDO PENSON, Defendant-Appellant.

First District (6th Division)   No. 1—88—3009

Opinion filed April 27, 1990.

McNAMARA, J., specially concurring.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Stephen L. Golan, Thomas Dent, and Brent I. Clark, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Paul Gliatta, and Catherine Bernard, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

After defendant Ricardo L. Penson entered a plea of guilty to five counts of deceptive practice, he was sentenced to felony probation and ordered to pay restitution to the complaining bank. Subsequently, he was found guilty of indirect criminal contempt for making a willful misrepresentation to the court at the time of the plea agreement and for willful refusal to comply with the conditions of probation. He was sentenced to the Cook County Department of Corrections for 30 days.

Although defendant lists eight issues on appeal, we find two to be dispositive: (1) whether the State failed to prove beyond a reasonable doubt that defendant's misrepresentation was willful and therefore

constituted indirect criminal contempt of court; and (2) whether the court erred in failing to give defendant an opportunity to purge his contempt. We reverse.

On May 8, 1985, the court accepted Penson's plea expressly conditioned upon the truth of his representation that he had wired $5,200 through a Texas bank to the victim bank. When questioned, Penson testified that he had authorized the wire transfer with his secretary in his Dallas office. He stated that his secretary had confirmed the transfer and had given him the bank receipt number, the time, and the name of the woman at the Federal Reserve Bank who took the order.

The court placed Penson on 30 months' probation and ordered him to pay restitution of $492 per month. The conditions of probation included: "Defendant states he wired $5,200 to United National Bank on May 7, 1985 at 1:57 p.m."

On January 14, 1986, the State filed a petition for violation of probation alleging that Penson had not paid the last two monthly payments and that the bank had not received the $5,200. The petition stated further that Penson was subject to various charges including contempt of court.

A violation of probation/contempt hearing was held on August 21, 1986. Penson testified that on May 9, 1985, he discovered the wire transfer of $5,200 had not occurred and immediately authorized two other transfers of $610 and $800. However, at the time of the hearing, more than one year and three months later, the bank had not yet received all of the $5,200 payment.

The trial court held that Penson's misrepresentation, that he had wired the money to the bank, was willful and that he had failed to comply with the order of restitution. The court sentenced Penson to a term of 30 days.

Penson appeals.

Meanwhile, his probation for the initial offense was terminated August 31, 1988. That termination states: "Restitution paid in full per letter of release."

I

Penson's first issue on appeal is whether the State failed to prove beyond a reasonable doubt that he had made a willful misrepresentation.

In criminal contempt cases, the State must prove the element of knowledge or willfulness. (*People v. Sheahan* (1986), 150 Ill. App. 3d 572, 574, 502 N.E.2d 48, 50.) A finding of willful contempt is a

matter of fact and "will not be disturbed on appeal unless there is a clear abuse of discretion." *People ex rel. Hartigan v. Jansen* (1986), 151 Ill. App. 3d 208, 213, 502 N.E.2d 1129, 1133.

■ For this finding, guilt must be proved beyond a reasonable doubt. (*Jansen,* 151 Ill. App. 3d at 213, 502 N.E.2d at 1133.) When a reviewing court must consider whether the State met its burden of proof, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461, 472, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573-74, 99 S. Ct. 2781, 2788-89.

Defendant contends that the State did not prove he had willfully misrepresented facts to the court. At the plea hearing, Penson entered into an agreement which was expressly conditioned upon the fact that he had already wired $5,200 to the victim bank. Upon questioning, Penson testified that he had not personally wired the money but had authorized his secretary in Texas to complete the transfer and had obtained a receipt number and other information to indicate that the transfer had occurred. Thus, he testified that he believed the money had been sent but did not truly know because he was relying on information from his secretary. The State did not present any direct evidence showing that Penson knew the money had not been sent at the time of the hearing.

Penson claims that when he discovered the money had not been transferred as he believed, he sent $1,410 to the bank. By the time of the contempt hearing, however, he had paid only $4,610 out of over $19,000 owed.

■ The trial court found that Penson's misrepresentation at the plea hearing was willful. Looking at the court testimony, however, it appears that Penson stated his belief, held in good faith, that money had been wired by his secretary. This belief proved erroneous. The fact that Penson told the court his erroneous belief does not prove that he willfully misrepresented facts to the court. While the record may tend to prove that Penson willfully refused to comply with the conditions of his probation, it is devoid of evidence which would tend to show that his misrepresentation was willful.

Furthermore, while Pensons' willful refusal to comply with conditions of probation may constitute civil contempt, we do not believe, based on our discussion of the next issue, that his actions rose to the level of indirect criminal contempt.

For these reasons, we hold that the State failed to meet its bur-

den of proving that Penson's misrepresentation was willful.

## II

Penson also argues that the trial court erred when it failed to allow him to purge his contempt by paying the money owed, which is proper procedure in cases of civil contempt.

■■ Contempt of court is "any act which is calculated to embarrass, hinder, or obstruct a court in the administration of justice, or which is calculated to lessen its authority or dignity." (*People v. Gholson* (1952), 412 Ill. 294, 298, 106 N.E.2d 333, 335.) Criminal contempt is action directed against the dignity or authority of the court, and civil contempt is failure to obey a court's order for the benefit of an opposing party in a civil action. (*Gholson*, 412 Ill. at 298, 106 N.E.2d at 336.) Consequently, criminal contempt sanctions preserve the dignity of the court and civil sanctions aim to enforce rights of private parties and to compel obedience to orders. (*In re Marriage of Wilde* (1986), 141 Ill. App. 3d 464, 469, 490 N.E.2d 95, 98-99.) Since imprisonment for civil contempt is coercive in purpose, it can usually be avoided by compliance with the court's orders. *Hoga v. Clark* (1983), 113 Ill. App. 3d 1050, 1058, 448 N.E.2d 196, 201.

■■ ■ Classifying a particular action as criminal or civil is often difficult because many cases involve elements of both. (*Gholson*, 412 Ill. at 298-99, 106 N.E.2d at 336.) The test for classifying contempt is the totality of circumstances as these influence the court's purpose to either punish the defendant or coerce his compliance with a court order. (See *People v. Marcisz* (1975), 32 Ill. App. 3d 467, 471-72, 357 N.E.2d 477, 479.) Generally, for instance, imprisoning a party for failure to pay money is not solely for the purpose of punishing the contemnor, but also to force payment. *Sullivan v. Sullivan* (1973), 16 Ill. App. 3d 549, 552, 306 N.E.2d 604, 606.

■■ Courts have found that violation of probation in the form of failure to pay costs or restitution can be treated as civil contempt. (*People v. Mowery* (1983), 116 Ill. App. 3d 695, 701, 452 N.E.2d 363, 368; *People v. Bertalot* (1988), 164 Ill. App. 3d 89, 92-93, 518 N.E.2d 465, 469.) The Unified Code of Corrections also provides a mechanism for enforcing payment of criminal penalties through civil contempt. Ill. Rev. Stat. 1987, ch. 38, pars. 1005—9—3(a), (b).

The court sentenced Penson both because he made a willful misrepresentation to the court, an act against the court's dignity, and because he failed to make restitution to the victim. Our analysis here has concluded that the court did not have sufficient evidence to support a conviction for the first reason. Furthermore, an examination of

the above-cited authorities leads us to conclude that Penson's failure to abide by the court order of restitution is best characterized as civil contempt.

Once contempt has been classified as civil, then the contemnor "holds the keys to the cell" in his pocket, *i.e.*, he has the power to purge his contempt by obeying the court order. (*In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 281, 545 N.E.2d 731, 734.) The "key" in a case with restitution is full payment of whatever is due. (*Mowery*, 116 Ill. App. 3d at 702, 452 N.E.2d at 368.) This key frees the contemnor even if the payment is part of a criminal sentence. Ill. Rev. Stat. 1987, ch. 38, pars. 1005—9—3(a), (b); *Bertalot*, 164 Ill. App. 3d at 93, 518 N.E.2d at 469.

Since Penson has paid his restitution in full, his contempt has been purged.

For these reasons, we reverse.

Judgment reversed and sentence vacated.

LaPORTA, P.J., concurs.

JUSTICE McNAMARA, specially concurring:

I concur with the majority's holding vacating the 30-day imprisonment sentence. I differ, however, with the majority in several other respects.

The majority avoids upholding the 30-day sentence by finding insufficient proof of wilfulness for the criminal contempt and by finding sufficient purging for the civil contempt. I agree that the 30-day sentence should not be upheld, but I rest my decision on a different basis. I believe that wilfulness for the criminal contempt was established, but that since defendant already served 16 days in jail for the underlying charge, I would vacate the 30-day sentence after finding that sufficient punishment in relation to this case has been imposed.

Criminal contempt concerns the dignity and authority of the court. A party acts in disrespect of the court or its process. The act tends to bring the court into disrepute or to obstruct the administration of justice. (*People v. Gholson* (1952), 412 Ill. 294, 106 N.E.2d 333; *People v. Redlich* (1949), 402 Ill. 270, 83 N.E.2d 736.) In the present case, the court clearly and consistently indicated over a long period of time that it was singularly concerned with defendant's disrespect of the judicial process, obstruction of the administration of justice through that process, and the manner in which defendant's conduct reflected on the court's dignity and authority.

Defendant testified at the violation of probation hearing that he did indeed have possession of the money on May 7, and again on May 13, 1985. The $5,200 consisted of a check made out to defendant, which came from an account belonging to defendant and his wife. He testified that he "physically got hold of the check." When defendant discovered the bank had not received the $5,200 on May 7, 1985, instead of wiring the same amount, incredibly he sent "whatever money was available," which turned out to be $610 and $800. The bank suggested he pay the $5,200 through the adult probation officer. Defendant did not do so "because at that time probation was *** non-reporting." Moreover, defendant also decided after the probation hearing that he should not have to pay the bank the full $5,200, because the bank had since debited his account in the amount of $2,365. Thus, he did not pay the bank or the probation officer because he believed "the money was not well accounted for and since [the bank was] not willing to speak to me I was just waiting until I got to court."

Defendant testified further that he never paid the $5,200 on or near May 8, 1985, because he needed the money for other things. He "did not have the money anymore because I had to pay some debts also from that money." He had to make payments to the IRS, to his parents, and to a bank in Cincinnati.

This testimony refutes the majority's holding that defendant's misrepresentation at the plea hearing merely reflected a mistaken belief that his secretary had wired the money and that his conduct was not wilful. Indeed, these facts demonstrate that the trial court acted properly in finding defendant guilty of indirect criminal contempt.

Defendant's actions both at the May 8 hearing and immediately thereafter constituted conduct which tends to bring the court into disrepute. It virtually ignored the court's authority, the meaning of sworn testimony, and the purpose underlying the judicial process. Defendant's decision to use the money for other purposes instead of making certain the bank received the money reflected directly on the court's dignity and authority. Defendant permitted the court to become a party to a meaningless, artificial probation proceeding. In addition to the probation order entered on May 8, 1985, the continuing status of probation rested upon a sworn promise that the money was being transmitted to the bank, which promise defendant casually and flagrantly ignored, even though he had the funds to comply. Defendant's conduct, as set forth above, constituted indirect criminal contempt of court. Moreover, these facts establish that the State proved wilfullness beyond a reasonable doubt.

Nor did defendant's eventual payment entitle him to be purged of

948

that contempt. The record is clear that civil contempt is not involved. Civil contempt is a process to secure obedience to a judgment or to coerce a party into obeying a court order which incidentally benefits another party. (*People ex rel. Scott v. Police Hall of Fame, Inc.* (1979), 69 Ill. App. 3d 501, 387 N.E.2d 856; *Eberle v. Greene* (1966), 71 Ill. App. 2d 85, 217 N.E.2d 6.) The trial court, in finding defendant guilty of contempt, was not trying to secure obedience to a judgment or to coerce him to obey an order. The trial court found that defendant was "in indirect criminal contempt of court by [his] wilful refusal to comply and by making a wilful representation to this court." The facts amply support the court's finding.

Notwithstanding my belief that defendant was proved guilty of indirect criminal contempt, I agree with the majority that the 30-day sentence imposed should be vacated. I believe that the 16 days defendant has served in jail are sufficient punishment.