Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/20/2018 08:15 AM CDT

State of Nebraska on behalf of Mariah B. and
Renee B., minor children, appellee,
v. Kyle B., appellant.

___ N.W.2d ___

Filed January 26, 2018.    No. S-16-1142.

1. **Contempt: Appeal and Error.** In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion.

2. **Contempt: Due Process: Judgments: Appeal and Error.** Though the ability to pay the purge amount in a civil contempt proceeding is a factual question that is reviewed for clear error, whether the facts result in a due process violation is a question of law.

3. **Contempt: Words and Phrases.** Civil contempt requires willful disobedience as an essential element. "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order.

4. **Contempt.** If it is impossible to comply with the order of the court, the failure to comply is not willful.

5. **Words and Phrases: Appeal and Error.** Willfulness is a factual determination to be reviewed for clear error.

6. **Contempt: Proof: Evidence: Presumptions.** Outside of statutory procedures imposing a different standard, it is the complainant's burden to prove civil contempt by clear and convincing evidence and without any presumptions.

7. **Contempt: Presumptions: Child Support.** Neb. Rev. Stat. § 42-358(3) (Reissue 2016) provides that a rebuttable presumption of contempt shall be established if a prima facie showing is made that court-ordered child or spousal support is delinquent.

- 760 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
298 NEBRASKA REPORTS
STATE ON BEHALF OF MARIAH B. & RENEE B. v. KYLE B.
Cite as 298 Neb. 759

8. ____: ____: ____. Necessarily, the rebuttable presumption of contempt provided by Neb. Rev. Stat. § 42-358(3) (Reissue 2016) encompasses the essential element of willfulness.

9. **Contempt: Evidence: Child Support.** In contempt proceedings, both Neb. Rev. Stat. § 42-358(3) (Reissue 2016) and logic dictate that a valid child support order is evidence of the parent's ability to pay the amount specified therein.

10. **Child Support.** The parent's ability to pay is an important consideration in setting the amount of a child support order.

11. **Child Support: Rules of the Supreme Court: Presumptions.** Child support established under the Nebraska Child Support Guidelines is presumed correct, unless one or both parties present sufficient evidence to rebut that presumption.

12. **Trial: Witnesses: Evidence.** Triers of fact have the right to test the credibility of witnesses by their self-interest and to weigh it against the evidence, or the lack thereof.

13. **Constitutional Law: Criminal Law: Contempt: Due Process.** A criminal or punitive sanction is invalid if imposed in a proceeding that is instituted and tried as civil contempt, because it lacks the procedural protections that the Constitution would demand in a criminal proceeding.

14. **Contempt: Sentences.** A present inability to comply with a contempt order is a defense, not necessarily to contempt, but to the sanction of incarceration.

15. **Contempt: Judgments.** When a purge order involves payment of money, the sum required to purge oneself of contempt must be within the contemnor's ability to pay within the time period provided in the order, taking into consideration the assets and financial condition of the contemnor and his or her ability to raise money.

16. **Contempt.** Contemnors in civil contempt must carry the keys of their jail cells in their own pockets.

17. **Contempt: Presumptions: Child Support.** The statutory presumption of contempt under Neb. Rev. Stat. § 42-358(3) (Reissue 2016) is inapplicable to the question of whether the purge plan is punitive.

18. **Contempt: Judgments.** Despite any overlap with the finding of willful disobedience in the underlying contempt, a court that imposes incarceration as part of civil contempt proceedings shall make express findings regarding the contemnor's ability to comply with the purge order.

19. **Contempt: Proof.** It is the contemnor who has the burden to assert and prove the inability to comply with the contempt order as a defense to incarceration.

- 761 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
STATE ON BEHALF OF MARIAH B. & RENEE B. v. KYLE B.
Cite as 298 Neb. 759

20. ____: ____. The burden of both production and persuasion is on the contemnor to show the present inability to comply.

21. ____: ____. A showing of inability to comply with a purge order entails attempts to exhaust all resources and assets or borrow sufficient funds and the inability to thereby secure the funds to comply with the order.

22. **Contempt.** The contemnor's inability to comply with a contempt order cannot be voluntarily created, for example by not diligently seeking a job at one's earning potential.

23. ____. The inability-to-pay threshold for determining that the contemnor lacks the keys to his or her own jail cell is higher than the indigence threshold for appointing counsel. Thus, a finding of indigency for purposes of retaining legal counsel does not preclude a finding that the contemnor is able to pay whatever purge amount has been set by the court.

24. **Child Support.** The support of one's children is a fundamental obligation which takes precedence over almost everything else.

Appeal from the District Court for Lancaster County: Kevin R. McManaman, Judge. Affirmed.

Nancy R. Wynner, of Olson, Zalewski & Wynner, L.L.P., for appellant.

Joe Kelly, Lancaster County Attorney, and Jason M. Cooper and Braden W. Storer, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Heavican, C.J.
## NATURE OF CASE
A father appeals from an order of civil contempt for failure to pay child support. He was found indigent for purposes of appointment of counsel in the contempt proceedings. He asserts that he did not willfully disobey the support order. Further, he argues that the purge plan set forth in the contempt order is impossible to perform, making it a punitive rather than coercive sanction. We affirm.

## BACKGROUND

### Paternity and Child Support Order

In a paternity action filed by the State due to the involvement of the "Title IV-D Division"[1] of the Department of Health and Human Services (DHHS), Kyle B. was established as the father of Mariah B. and Renee B. Genetic testing had determined with a probability of 99.999 percent that Kyle was the biological father of the children.

Kyle was ordered to pay $230 in child support per month beginning on December 1, 2015. The amount of Kyle's monthly child support obligation was established in accordance with the child support guidelines. The district court referee calculated that Kyle was capable of earning $8 per hour and of working 40 hours per week, for a total monthly earning capacity of $1,387. By failing to respond to the State's request for admissions, Kyle was deemed to have admitted this earning potential. Attached to the referee's report was evidence that Kyle had earned $4,306.90 working at a roofing company from October to December 2014 and had earned $3,578.62 working there from July to September 2014.

Kyle did not attend the hearing at which evidence was submitted pertaining to paternity and child support, and his counsel withdrew. Kyle did not appeal from the child support order.

### Contempt Order

On June 7, 2016, the court issued an order for Kyle to appear at a hearing scheduled for July 7 and show cause why he should not be in contempt for willfully failing to comply with the December 2015 order. The order to appear required Kyle to bring to the hearing his income tax returns for the past 3 years, as well as his last three wage statements. Kyle was appointed counsel on July 8, 2016, upon a finding of

---

[1] Neb. Rev. Stat. § 43-3341(12) (Reissue 2016).

- 763 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
STATE ON BEHALF OF MARIAH B. & RENEE B. v. KYLE B.
Cite as 298 Neb. 759

indigency. On September 12, the court issued another order to appear, at a hearing scheduled for November 2, on the order to show cause.

Kyle appeared at the November 2, 2016, hearing, represented by his appointed counsel. At the hearing, the State introduced a certified copy of a history of Kyle's payments to DHHS. The document demonstrated that Kyle had never made payments on the December 2015 order and that he was $2,551.59 in arrears.

Kyle did not submit income tax returns, wage statements, or any other financial documentation. The only evidence presented by Kyle at the hearing was his own testimony. Kyle testified that he was unemployed. Kyle stated that his "last good job" was working as a "roof loader" for the roofing company. That job ended in November 2015 when he was laid off for the winter.

Kyle testified that he had been applying for three jobs per week for the past 2 months, as required by a workforce development program he was participating in. The most recent jobs he applied for were at a supermarket, a home improvement store, and a discount department store. Kyle explained that he had not applied for work at a fast food restaurant or for other food service work, because he was still "trying to get [his] food handler's permit to go that route."

Kyle refused to describe how many and what jobs he had applied for in the approximately 10-month period between the November 2015 layoff and beginning the workforce development program. After repeated evasiveness on Kyle's part, the court instructed him to "calm[] down" and "listen carefully" to the State's questions. But Kyle still refused to describe in detail his search for employment, stating, "I'm not gonna sit here and just keep beating around the bush about I'm not trying to get a job or this or that."

Kyle stated that he had done some subcontracting work since being laid off at the roofing company. He did not say how long he had worked as a subcontractor, nor how much he had earned.

- 764 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
STATE ON BEHALF OF MARIAH B. & RENEE B. v. KYLE B.
Cite as 298 Neb. 759

Kyle indicated that he had not pursued more subcontracting work because he was disabled. Kyle testified that he had a "third grade reading and writing disability" and "a back problem and a neck problem" related to a fall out of a tree in 2005. Kyle testified that he had applied for disability benefits the day before the hearing.

Kyle testified that he paid $506 per month for rent and utilities. He spent an unknown amount on cigarettes. He also had a third child, a 6-month-old daughter, to support.

Kyle explained that he had not paid child support for Mariah and Renee because he was struggling financially. Kyle elaborated that during the times that he was employed as a subcontractor, it was not "that much money or that much work." What money he had made "[p]robably" went toward his rent and utilities. Beyond Kyle's odd jobs, the mother of Kyle's 6-month-old daughter had been paying their rent, utilities, and other expenses with her Social Security income. That relationship had recently ended, however, and Kyle testified that he had "no money" at the time of the hearing.

Kyle did not clearly indicate whether he had applied for or received unemployment benefits at any point since he was laid off in November 2015. He testified that he was not receiving any assistance at the time of the hearing.

Kyle expressed that the amount of the support order was too high. Kyle indicated that the amount of the support order may have been set too high because he had failed to attend the paternity hearing in December 2015. He claimed he had missed the hearing because he did not receive the paperwork informing him of the court date. Though Kyle claimed he had since brought the amount of the child support order to the court's attention two or three times, there is no evidence that Kyle moved for modification of the order.

Kyle did not deny being aware of the December 2015 child support order as of its effective date. He specifically acknowledged that he was aware of the child support order, though his testimony was imprecise as to when. He said:

- 765 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
STATE ON BEHALF OF MARIAH B. & RENEE B. v. KYLE B.
Cite as 298 Neb. 759

> Well, I think the first time that I was aware that I was starting to pay child support, the guy who was representing me did not give me the paperwork to where I was supposed to make the payment to the child support, this and that. I don't know. It's my first time going through this stuff. I got reading and writing and disability problems myself. I've just been trying to figure out — it's been set at such a high — such high — like 200-whatever dollars, and I've been telling them that it's been hard for me to afford to pay my own bills and to still be able to afford to pay the child support.

Kyle did not assert that ignorance of the order was the reason for his failure to pay child support.

The court found Kyle in willful contempt of the December 2015 order. In its written contempt order, the court specifically found that during the period applicable to the contempt citation, Kyle had the ability to pay the support ordered. Pursuant to the contempt order, Kyle was committed to 60 days' jail time, to be suspended as long as he paid to the clerk of the court "$230.00 a month on current child support and $100.00 [a month] on arrearage, commencing January 1, 2017." In the event that Kyle complied with this payment schedule for 18 months, he would be purged of contempt. In the event commitment was issued as a result of noncompliance, he would be released and purged of contempt upon payment of $1,000. The court did not set forth an explicit finding that Kyle was at that time able to pay the purge amount. Nor does the record reflect that the court pronounced its order in Kyle's presence.

Kyle timely appeals the contempt order.

## ASSIGNMENTS OF ERROR

Kyle assigns that the district court abused its discretion in (1) finding him in civil contempt; (2) imposing an unreasonable, arbitrary, capricious, and punitive sanction; and (3) setting for the purge plan payment amounts that were impossible to perform.

- 766 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
STATE ON BEHALF OF MARIAH B. & RENEE B. v. KYLE B.
Cite as 298 Neb. 759

## STANDARD OF REVIEW

[1] In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion.[2]

[2] Though the ability to pay the purge amount is a factual question that we review for clear error, whether the facts result in a due process violation is a question of law.[3]

## ANALYSIS

Kyle appeals from a contempt order imposed to enforce the prior judgment of paternity and child support.[4] The parties agree that the underlying proceedings were instituted and tried as civil contempt. Kyle's attorney asserts on appeal that the district court erred in finding Kyle in contempt because he did not willfully disobey the support order and, further, that the court erred in setting a purge amount that resulted in a punitive rather than coercive sanction. Kyle asserts that for these reasons, the district court's order was unreasonable, arbitrary, and capricious.

### Willful

[3-5] We first address whether the court clearly erred in finding that Kyle's violation of the child support order was

---

[2] *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012).

[3] See, *United States v. Armstrong*, 781 F.2d 700 (9th Cir. 1986); *Arbor Farms v. GeoStar Corp.*, 305 Mich. App. 374, 853 N.W.2d 421 (2014); *Reed v. Reed*, 265 Mich. App. 131, 693 N.W.2d 825 (2005); *In re Wilson*, 879 A.2d 199 (Pa. Super. 2005).

[4] See *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), *disapproved on other grounds, Hossaini v. Vaelizadeh, supra* note 2.

- 767 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
STATE ON BEHALF OF MARIAH B. & RENEE B. v. KYLE B.
Cite as 298 Neb. 759

willful. Civil contempt requires willful disobedience as an essential element.[5] "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order.[6] If it is impossible to comply with the order of the court, the failure to comply is not willful.[7] Willfulness is a factual determination to be reviewed for clear error.[8]

[6-8] Outside of statutory procedures imposing a different standard, it is the complainant's burden to prove civil contempt by clear and convincing evidence and without any presumptions.[9] But, as this is a case involving child support payable to DHHS, the presumption set forth in Neb. Rev. Stat. § 42-358(3) (Reissue 2016) is applicable. Section 42-358(3) provides in part that "[a] rebuttable presumption of contempt shall be established if a prima facie showing is made that the court-ordered child or spousal support is delinquent." Necessarily, the rebuttable presumption of contempt provided by § 42-358(3) encompasses the essential element of willfulness.[10]

It is undisputed that the State made such a prima facie showing that Kyle was delinquent in his court-ordered child support by providing a certified copy of payments, balances, and arrearages maintained by the Title IV-D Division of DHHS.[11]

---

[5] *Hossaini v. Vaelizadeh, supra* note 2.

[6] *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016). See, also, *Hossaini v. Vaelizadeh, supra* note 2.

[7] *Novak v. Novak*, 245 Neb. 366, 513 N.W.2d 303 (1994), *overruled on other grounds, Smeal Fire Apparatus Co. v. Kreikemeier, supra* note 4.

[8] See, *In re Interest of Thomas M.*, 282 Neb. 316, 803 N.W.2d 46 (2011); *State on behalf of Lockwood v. Laue*, 24 Neb. App. 909, 900 N.W.2d 582 (2017). See, also, e.g., *In re Hollis*, 150 B.R. 145 (D. Md. 1993); *People v. Penson*, 197 Ill. App. 3d 941, 557 N.E.2d 230, 145 Ill. Dec. 460 (1990); *McLarty v. Walker*, 307 S.W.3d 254 (Tenn. App. 2009).

[9] *Smeal Fire Apparatus Co. v. Kreikemeier, supra* note 4.

[10] See *D'Angelo v. Guarino*, 88 So. 3d 683 (La. App. 2012).

[11] See Neb. Rev. Stat. § 43-3342.01 (Reissue 2016).

- 768 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
STATE ON BEHALF OF MARIAH B. & RENEE B. v. KYLE B.
Cite as 298 Neb. 759

We conclude that the district court did not err in finding that Kyle's testimony failed to rebut the presumption of contempt established pursuant to § 42-358(3).

Contrary to the assertions of Kyle's attorney on appeal, Kyle did not indicate at the contempt hearing that he was ignorant of the fact that he was violating a court order. The only testimony regarding Kyle's lack of knowledge related to his failure to attend the paternity hearing. Kyle's testimony that he was confused at some point about where he was supposed to send his payments did not rebut the presumption of willfulness; instead, it demonstrated his knowledge of the support order.

Neither do we find merit to Kyle's argument that the district court erred in concluding that it was possible to comply with the support order. Kyle argues that the district court erred in finding his conduct willful because there was no evidence that he was able to pay the court-ordered child support. But the State presented evidence establishing a presumption that Kyle was able to comply with the 2015 order when it made a prima facie showing that the court-ordered child support was delinquent.[12]

[9] Other jurisdictions hold under either common law or a statutory presumption that a child support order calculated in accordance with applicable guidelines creates a presumption that the parent was able to pay the amount so ordered during the time period subject to contempt.[13] The parent rebuts this presumption of ability to pay by demonstrating that circumstances beyond the parent's control have intervened since the time the child support order was entered.[14] We similarly hold that in contempt proceedings, both § 42-358(3) and logic dictate that a valid child support order is evidence of the parent's ability to pay the amount specified therein.

---

[12] See § 42-358(3).

[13] See, *Polli v. Vina*, 557 So. 2d 55 (Fla. App. 1989). See, also, 18 U.S.C. § 228(b) (2012).

[14] See *Polli v. Vina, supra* note 13.

- 769 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
STATE ON BEHALF OF MARIAH B. & RENEE B. v. KYLE B.
Cite as 298 Neb. 759

[10,11] The Nebraska Court of Appeals applied a similar presumption in *In re Interest of Noelle F. & Sarah F.*[15] when it held that a child support order issued in accordance with the Nebraska Child Support Guidelines presupposed a financial ability that, absent other evidence, defeated a claim of indigence for purposes of appointment of counsel. We have consistently held that in determining the amount of a child support award, the trial court must consider the status, character, and situation of the parties and attendant circumstances, including the financial condition of the parties and the estimated cost of support of the children.[16] In other words, the parent's ability to pay is an important consideration in setting the amount of the child support order.[17] We have also held that child support established under the Nebraska Child Support Guidelines is presumed correct, unless one or both parties present sufficient evidence to rebut that presumption.[18]

The best way to rebut the presumption of an ability to pay established by a child support order issued in accordance with the Nebraska Child Support Guidelines is evidence to demonstrate a change of circumstances. Though not decisive in a contempt proceeding, procedures exist for parents whose situation has changed to timely file a complaint for modification of the child support order pursuant to Neb. Rev. Stat. § 42-364 (Reissue 2016) or to ask DHHS to consider referring the child support order to the county attorney or authorized attorney for filing an application for modification under Neb. Rev. Stat. § 43-512.15 (Reissue 2016).[19]

---

[15] *In re Interest of Noelle F. & Sarah F.*, 3 Neb. App. 901, 534 N.W.2d 581 (1995).

[16] *Faaborg v. Faaborg*, 254 Neb. 501, 576 N.W.2d 826 (1998).

[17] See *id.* See, also, *Bird v. Bird*, 205 Neb. 619, 288 N.W.2d 747 (1980).

[18] See, *State on behalf of A.E. v. Buckhalter*, 273 Neb. 443, 730 N.W.2d 340 (2007); *Sylvis v. Walling*, 248 Neb. 168, 532 N.W.2d 312 (1995).

[19] See, also, Neb. Rev. Stat. § 43-512.12 (Reissue 2016).

Kyle failed to demonstrate a change of circumstances defeating the presumption of his ability to pay in accordance with the support order. Viewed in the light most favorable to the prevailing party, Kyle's unsupported claims of unemployment and disability stated nothing new or different. Other than his testimony that he had applied for three jobs per week for the past 2 months with no success, Kyle did not present any evidence that his ability to earn $8 per hour and work 40 hours per week had diminished since the date of the support order. Instead, he was evasive when asked to specify how many jobs and what kind of jobs he had applied for during the 11 months he failed to pay child support, and none he described appeared to be in a field he had experience in. Given that Kyle was working as a roof loader with the same alleged disabilities until his seasonal layoff in November 2015, Kyle failed to adequately explain why he has not since sought employment in a similar field.

Kyle's testimony that he suffered disabilities that diminished his earning capacity was simply as follows: "I was actually taking on some jobs through a subcontractor subcontracting work and finishing up some work there. But physically with my disability and this and that, I try to do things hands-on so —." Kyle presented no medical documentation or expert testimony supporting his assertion that he suffered from reading and writing disabilities and "a back problem and a neck problem" which prevented him from earning income sufficient to pay his child support obligations.

Furthermore, as this testimony illustrates, Kyle was vague as to the extent he had actually earned income doing subcontracting work during the 11 months that the support order had been in effect. Kyle failed to comply with the court's prior order that he submit at the hearing his tax returns and wage statements. Kyle failed to provide the court with any employment records. The court reasonably could have made a negative inference from Kyle's disobedience of the court's order. Though Kyle stated that his support was sometimes supplied

- 771 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
298 NEBRASKA REPORTS
STATE ON BEHALF OF MARIAH B. & RENEE B. v. KYLE B.
Cite as 298 Neb. 759

entirely by the mother of his 6-month-old daughter, such testimony does not establish his inability to become employed; nor do his obligations toward that child relieve him of the duty to support Mariah and Renee.[20]

[12] Triers of fact have the right to test the credibility of witnesses by their self-interest and to weigh it against the evidence, or the lack thereof.[21] In this case, Kyle's testimony was woefully inadequate when weighed against the presumption inherent to the child support order that he was capable of paying it. The district court did not clearly err in finding that during the period applicable to the contempt citation, Kyle had the ability to pay the support ordered by the December 2015 order. By explicitly finding that Kyle had the ability to pay and implicitly finding that Kyle had knowledge of the support order, the district court found that Kyle's disobedience was willful. The court did not clearly err in these findings and did not abuse its discretion in determining that Kyle was in contempt.

## ABILITY TO COMPLY WITH PURGE ORDER

[13,14] We turn next to whether the court erred in setting a purge amount in excess of Kyle's present ability to pay, thereby making the sanction of incarceration punitive. A criminal or punitive sanction is invalid if imposed in a proceeding that is instituted and tried as civil contempt, because it lacks the procedural protections that the Constitution would demand in a criminal proceeding.[22] A present inability to comply with a contempt order is a defense, not necessarily to contempt, but

---

[20] See *Richardson v. Anderson*, 8 Neb. App. 923, 604 N.W.2d 427 (2000).

[21] *Ohnstad v. Omaha Public Sch. Dist. No. 1*, 232 Neb. 788, 442 N.W.2d 859 (1989); *First Nat. Bank of Omaha v. First Cadco Corp.*, 189 Neb. 734, 205 N.W.2d 115 (1973).

[22] *Sickler v. Sickler, supra* note 6.

- 772 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
STATE ON BEHALF OF MARIAH B. & RENEE B. v. KYLE B.
Cite as 298 Neb. 759

to the sanction of incarceration.[23] Though the ability to pay the purge amount is a factual question that we review for clear error, whether the facts result in a due process violation is a question of law.[24]

[15,16] When a purge order involves payment of money, the sum required to purge oneself of contempt must be within the contemnor's ability to pay within the time period provided in the order, taking into consideration the assets and financial condition of the contemnor and his or her ability to raise money.[25] For the punishment to retain its civil character, the contemnor must, at the time the sanction is imposed, have the ability to purge the contempt by compliance and either avert punishment or, at any time, bring it to an end.[26] Contemnors in civil contempt must carry the keys of their jail cells in their own pockets.[27]

[17] Though related and involving similar evidence, the due process question of whether Kyle is able to pay the purge amount is not the same as whether Kyle willfully violated the December 2015 child support order and was thereby in contempt. The statutory presumption of contempt under § 42-358(3) does not determine the question of whether the purge plan is punitive. And while a presumption of an ability to pay the child support order made in accordance with the Nebraska Child Support Guidelines may be relevant, it is not conclusive as to the reasonableness of the purge amount. Kyle's ability to pay in accordance with the child support order was evaluated over the 11-month period since its issuance,[28]

---

[23] See *id*.

[24] See, *United States v. Armstrong, supra* note 3; *Arbor Farms v. GeoStar Corp., supra* note 3; *Reed v. Reed, supra* note 3; *In re Wilson, supra* note 3.

[25] See *id*.

[26] *Id.*

[27] See *id.*

[28] See *id.*

- 773 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
STATE ON BEHALF OF MARIAH B. & RENEE B. v. KYLE B.
Cite as 298 Neb. 759

but whether the purge plan was punitive was evaluated at the time of the order of contempt. A past ability to comply with an order does not show a present ability to purge the contempt.[29] But past failure coupled with unpersuasive or unsupported claims of present inability is sufficient.

[18] We reiterate our recent holding in *Sickler v. Sickler*[30] that, despite any overlap with the finding of willful disobedience in the underlying contempt, a court that imposes incarceration as part of civil contempt proceedings shall make express findings regarding the contemnor's ability to comply with the purge order. Such a finding is required because of "the importance of the ability to comply in distinguishing between civil and criminal contempt and its due process implications."[31]

While the district court stated in its order that Kyle had the ability to pay the support obligation, it failed to explicitly find that Kyle had the present ability to comply with the contempt order. Kyle does not assign as error the court's failure to make a specific finding regarding his ability to comply with the contempt order, however. And we find no plain error, because the record supports the court's implicit conclusion that Kyle failed to prove an inability to comply.

[19-22] It is the contemnor who has the burden to assert and prove the inability to comply with the contempt order as a defense to incarceration.[32] The burden of both production and persuasion is on the contemnor to show the present inability to comply.[33] Such a showing entails attempts to exhaust all resources and assets or borrow sufficient funds and the inability to thereby secure the funds to comply with the purge

---

[29] *Sickler v. Sickler, supra* note 6.

[30] *Id.*

[31] *Id.* at 543, 878 N.W.2d at 566.

[32] See *Sickler v. Sickler, supra* note 6.

[33] *Id.*

order.[34] In general, the contemnor's inability to comply cannot be voluntarily created, for example by not diligently seeking a job at one's earning potential.[35]

As already discussed, the evidence suggested that Kyle was able to work as a roof loader despite his claimed disabilities. The district court did not find credible Kyle's testimony to the contrary.

Kyle's evidence that he was unable to comply consisted of his self-serving and vague testimony that he had unsuccessfully applied for work during the prior 2 months. The only specific testimony regarding Kyle's recent attempts to gain employment were that he had applied for three jobs per week and that his most recent three applications were in retail—a field that there was no evidence he had experience in. Kyle provided scant evidence he was incapable of finding work similar to his "last good job" as a roof loader, which he had been able to perform despite the disabilities alleged at the hearing. Kyle's failure to find a job in the 2 months preceding the hearing did not foreclose the district court from finding that Kyle would be able to obtain full-time employment within the 2-month grace period of the contempt order.

Furthermore, although Kyle testified that he did not own a vehicle or his home, and that he had "no money," Kyle failed to make a full accounting of his assets. Instead, he disobeyed the court's order to produce his tax documents.

Finally, Kyle presented no evidence whatsoever of an inability to borrow sufficient funds to comply with the purge order.

[23] It is true that the district court found Kyle indigent on July 8, 2016, for purposes of the appointment of counsel. Kyle relies on this finding in asserting that it was impossible for him to pay the purge amount. But the inability-to-pay threshold for determining that the contemnor lacks the keys to

---

[34] *Id.*

[35] See *Jenkins v. State*, 60 Neb. 205, 82 N.W. 622 (1900).

- 775 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
STATE ON BEHALF OF MARIAH B. & RENEE B. v. KYLE B.
Cite as 298 Neb. 759

his or her own jail cell is higher than the indigence threshold for appointing counsel.[36] Thus, a finding of indigency for purposes of retaining legal counsel does not preclude a finding that the contemnor is able to pay whatever purge amount has been set by the court.

Neb. Rev. Stat. § 29-3901(3) (Reissue 2016) defines indigent as "the inability to retain legal counsel without prejudicing one's financial ability to provide economic necessities for one's self or one's family." A court may find indigency for purposes of appointment of counsel based alone on a situation where expenses exceed income, and a person is not required to prejudice one's financial ability to provide economic necessities for oneself or one's family in order to be determined indigent for that purpose.[37] Nor must a person dispose of all his or her assets or have exhausted all possible sources of borrowing money before being eligible for appointment of counsel.[38]

[24] In contrast, as stated, an inability to comply with a purge order entails having exhausted all assets and opportunities to borrow sufficient funds.[39] Moreover, a purge order involving simply the arrears owed in child support promotes rather than prejudices the contemnor's provision for his or her family. As we have said before, "[t]he support of one's children is a fundamental obligation which takes precedence over almost everything else."[40]

We read the contempt order as including the $230 monthly support obligation as part of the purge amount. It may have

---

[36] See *In re Mancha*, 440 S.W.3d 158 (Tex. App. 2013). See, also, *Lamb v. Eads*, 346 N.W.2d 830 (Iowa 1984). But see, *Turner v. Rogers*, 564 U.S. 431, 131 S. Ct. 2507, 180 L. Ed. 2d 452 (2011); *Andrews v. Walton*, 428 So. 2d 663 (Fla. 1983); *State ex rel. Shaw v. Provaznik*, 708 S.W.2d 337 (Mo. App. 1986).

[37] See *State v. Masilko*, 226 Neb. 45, 409 N.W.2d 322 (1987).

[38] *Id.*

[39] See *Sickler v. Sickler, supra* note 6.

[40] *State v. Reuter*, 216 Neb. 325, 328, 343 N.W.2d 907, 910 (1984).

been the court's intention to impose as the purge amount $100 monthly in arrearages and to simply reiterate that Kyle must continue his underlying monthly support obligation during that time. But that does not appear on the face of the order to be what the court did. While we recognize the purge order in this respect is irregular, in that it includes future child support installments which have not yet accrued, Kyle does not challenge the propriety of including in the purge amount his ongoing monthly obligation. The question presented is whether it was impossible to comply with the order. The record supports the court's conclusion that Kyle did not demonstrate inability to pay $330 monthly for 18 months, beginning approximately 2 months from the time of the contempt hearing, or, alternatively, inability to pay $1,000 once jailed.

We find no merit to Kyle's claim that the contempt order impermissibly imposed a criminal or punitive sanction in a civil proceeding.

## CONCLUSION

There is no merit to Kyle's assignments of error challenging the underlying finding of contempt and the reasonableness of the purge amount. We affirm the order of contempt.

AFFIRMED.

WRIGHT, J., not participating.